# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

KIMBERLEE WILLIAMS, individually, as personal representative of the Estate of Charles L. Williams, deceased on behalf of said estate, and as representative of others similarly situated; NANCY PEASE, individually, as personal representative of the Estate of William Clark, deceased on behalf of said estate, and as representative of others similarly situated; MARILYN L. HOLLEY, as personal representative of the Estate of Kathryn Darnell, deceased on behalf of said estate, and as representative of others similarly situated; DONNA WARE, individually as personal representative of the Estate of Ralph Ware, deceased on behalf of said estate, and as representative of others similarly situated; DONNETTE WENGERD, individually, as personal representative of the Estate of Jennifer Graham, deceased on behalf of said estate and as representative of others similarly situated, and ROSANNE CHERNICK, individually, as personal representative of the Estate of Steven Chernick, deceased on behalf of said estate, and as representative of others similarly situated.,

     Plaintiffs,

v.

BASF CATALYSTS LLC, CAHILL GORDON & REINDEL LLP, THOMAS D. HALKET, ARTHUR A. DORNBUSCH II, HOWARD G. SLOANE (A/K/A "PETER SLOANE"), IRA J. DEMBROW, JOHN DOE BUSINESS ENTITIES 1 to 100; JOHN DOE BUSINESS ENTITIES 101 to 200; JOHN DOE LAWYERS 1 to 500; and, JOHN DOE 1 to 500

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Misc. Case No.

1: 17 MC 00015

JUDGE

(This action is pending before the United States District Court for the District of New Jersey, Case No. 2:11-cv-01754)

**DEFENDANT BASF CATALYSTS LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENFORCE SUBPOENA DUCES TECUM**

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

    A.    The *Williams* Litigation ........................................................................... 1

    B.    Bevan's Central Role In The *Williams* Allegations ................................ 3

    C.    BASF's Subpoena And Bevan's Failure To Produce Documents In Response .................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.    BASF'S SUBPOENA SEEKS DOCUMENTS THAT ARE HIGHLY RELEVANT TO THE CLAIMS AND DEFENSES IN *WILLIAMS* ...................... 6

    A.    BASF's Subpoena Seeks Documents Pertaining To The Named Ohio Plaintiffs That Are Highly Relevant to the *Williams* Litigation ............ 6

    B.    Documents Concerning Bevan's Handling Of Asbestos Claims Against Engelhard Are Relevant To The Class Certification Issues In *Williams* ................ 9

II.    PLAINTIFFS HAVE WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGE BY PUTTING "AT ISSUE" THE LEGAL ADVICE THEIR DECEDENTS RECEIVED FROM BEVAN ..................................................... 11

III.    BASF'S SUBPOENA DOES NOT IMPOSE AN UNDUE BURDEN ON BEVAN ....................................................................................................................... 14

CONCLUSION .................................................................................................................... 15

i

### TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997)............................................................................10

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
 300 F.R.D. 406 (C.D. Cal. 2014)........................................................5

*Atchison Casting Corp. v. Marsh, Inc.,*
 216 F.R.D. 225 (D. Mass. 2003).........................................................9

*Banco Popular N. Am. v. Gandi,*
 876 A.2d 253 (N.J. 2005)....................................................................7

*DIRECTV, Inc. v. Puccinelli,*
 224 F.R.D. 677 (D. Kan. 2004)...........................................................9

*Ford Motor Co. v. Edgewood Props., Inc.,*
 2010 WL 2516461 (D.N.J. June 14, 2010)........................................12

*FTC v. Chemence, Inc.,*
 No. 16 CV 228, 2016 WL 3960492 (N.D. Ohio July 19, 2016)...........15

*Georgine v. Amchem Prods., Inc.,*
 83 F.3d 610 (3d Cir. 1996).................................................................10

*Grace v. Mastruserio,*
 912 N.E.2d 608 (Ohio Ct. App. 2007).....................................12, 13, 14

*Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins.*
 Co., 2011 WL 4507417 (E.D. Mich. Sept. 29, 2011).........................15

*Hastings v. Asset Acceptance, LLC,*
 2007 WL 461477 (S.D. Ohio Feb. 7, 2007)........................................10

*In re G-I Holdings,*
 218 F.R.D.............................................................................12, 14

*In re Heparin Prods. Liab. Litig.,*
 273 F.R.D. 399 (N.D. Ohio 2011)........................................................5

*Lewis v. ACB Bus. Servs., Inc.,*
 135 F.3d 389 (6th Cir. 1998) ..............................................................5

*Meshulam v. Meshulam,*
    2016 WL 4080760 (N.J. Super. Ct. App. Div. Aug. 1, 2016) ....................................12, 13, 14

*Nash v. City of Oakwood, Ohio,*
    90 F.R.D. 633 (S.D. Ohio 1981) ........................................................................................10

*R.C. Olmstead, Inc., v. CU Interface, LLC,*
    606 F.3d 262 (6th Cir. 2010) ..............................................................................................15

*Raymark Indus., Inc. v. Stemple,*
    1990 WL 72588 (D. Kan. May 30, 1990) ............................................................................14

*Rosenblit v. Zimmerman,*
    766 A.2d 749 (N.J. 2001) ......................................................................................................8

*Rui He v. Rom,*
    2016 WL 909405 (N.D. Ohio Mar. 10, 2016) ......................................................................5

*Schweinfurth v. Motorola, Inc.,*
    2008 WL 4449081 (N.D. Ohio Sept. 30, 2008) ..................................................................10

*Squire, Sanders & Dempsey LLP v. Givaudan Flavors Corp.,*
    937 N.E.2d 533 (Ohio 2010) ................................................................................................12

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.,*
    2013 WL 10936871 (E.D. Mich. Nov. 26, 2013) ................................................................15

*Tartaglia v. UBS PaineWebber Inc.,*
    961 A.2d 1167 (N.J. 2008) ....................................................................................................8

*Taylor v. Universal Auto Grp. I, Inc.,*
    2015 WL 1810316 (S.D. Ohio Apr. 17, 2015) ....................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................................................9

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................11

Fed. R. Civ. P. 23(a)(2) ............................................................................................................10

Fed. R. Civ. P. 23(a)(3) ............................................................................................................10

Fed. R. Civ. P. 23(b)(3) ............................................................................................................10

Fed. R. Civ. P. 26 ......................................................................................................................5

Fed. R. Civ. P. 26(b)(1)............................................................................................................5, 7

iii

Fed R. Civ. P. 45 ..............................................................................................................5

**Other Authorities**

9A Wright & Miller, *Federal Practice and Procedure* § 2463.1 ....................................15

Am. Bar Ass'n, Comm'n on Asbestos Litig., Report to the House of Delegates, at
    13 (Feb. 2003)...............................................................................................................14

## INTRODUCTION

This is a motion to enforce third-party subpoena issued by BASF Catalysts LLC to the Ohio law firm of Bevan & Associates and one of its lawyers, Thomas Bevan (collectively, "Bevan"). BASF has issued this subpoena in connection with *Williams v. BASF Catalysts LLC,* Civil Action No. 2:11-cv-01754 (D.N.J.), an extraordinary putative class action alleging litigation fraud in past asbestos cases. Five of the six named plaintiffs in *Williams* are former clients of the Bevan firm who allege that they and Bevan were defrauded in decades-old Ohio asbestos cases. Because the complaint in *Williams* makes numerous allegations about what the Bevan firm knew, considered, relied upon, and did in the underlying cases, Bevan's documents are unquestionably relevant to *Williams.* The *Williams* plaintiffs have also waived their attorney-client privilege with Bevan by putting "at issue" the legal advice Bevan provided them. and Bevan has failed to substantiate its claims of undue burden. For these reasons and those set forth below, Bevan should be required to comply with BASF's valid subpoena.[1]

## BACKGROUND

### A.    The *Williams* Litigation

The litigation that gives rise to this motion is *Williams v. BASF Catalysts LLC,* No. 2:11-cv-01754 (D.N.J.), pending in the United States District Court for the District of New Jersey. The *Williams* case is a putative class action alleging fraud and fraudulent concealment in decades-old underlying asbestos litigations in which the plaintiffs' decedents, former manufacturing and industrial workers, brought personal injury claims against dozens of companies, including Engelhard Corporation. Those underlying lawsuits have long since been resolved. The purported basis for suing Engelhard in those asbestos cases was that from 1967 to

---

[1]    Concurrently with this motion, BASF has filed a separate request to transfer this ancillary proceeding to the District of New Jersey, which is overseeing the *Williams* litigation. Bevan has agreed to the transfer.

1983, Engelhard operated a Vermont talc mine whose talc (sold under the brand name "Emtal talc") allegedly contained asbestos fibers as natural impurities in the talc ore.  Ex. A (7/16/15 *Williams* 2d Am. Compl. ("SAC") ¶¶ 17-34, 78-81).  Plaintiffs claim their decedents were exposed to this talc in tire manufacturing facilities. *Id.* ¶¶ 17-34.  BASF acquired Engelhard in June 2006 and renamed it BASF Catalysts LLC. *Id.* ¶ 36.[2]

The six named plaintiffs in *Williams* purport to represent a nationwide putative class comprised of at least "several thousand asbestos claimants across the United States" who, for the last several decades, "were exposed to BASF's talc and/or talc products, sustained an asbestos related injury ... [or] who have or had the right to claim damages derivatively based upon such exposed person's asbestos related injury." *Id.* ¶¶ 277, 286.  Five named plaintiffs, "Williams, Pease, Holley, Ware, Wengerd[,] and/or their respective decedents ... were all represented in asbestos injury claims by the Northern Ohio law firm of Bevan & Economus or Bevan & Associates LPA, Inc." *Id.* ¶ 204; *see also id.* ¶¶ 19, 22, 25, 28, 31.

The *Williams* plaintiffs allege that they and putative class members: "(a) did not pursue their claims against BASF; (b) voluntarily ended their claims against BASF without receiving any or full, fair and just compensation ... ; or (c) based upon the misrepresentations and omissions to courts, suffered an involuntary termination of their asbestos injury claims against BASF," as a result of Engelhard and its former law firm, Cahill Gordon & Reindel LLP, allegedly withholding information about the purported existence of asbestos in Emtal talc. *Id.* ¶ 5.  Plaintiffs' Second Amended Complaint sets forth claims for fraudulent concealment, fraud, and civil conspiracy. *Id.* ¶¶ 299-337.

---

[2]   Although BASF strenuously disputes the allegations in *Williams*, this motion recites the allegations as pleaded. Although the events in question concern Engelhard and not BASF, the plaintiffs in *Williams* refer in their complaint to "BASF." BASF quotes the complaint as pleaded in this brief, but notes that the *Williams* case primarily concerns actions taken by Engelhard, decades before BASF acquired Engelhard.

**B.**    **Bevan's Central Role In The *Williams* Allegations**

Bevan's prior representation of all five Ohio named plaintiffs and thousands of other putative class members in asbestos actions against Engelhard is a central feature of the *Williams* case. *See id.* ¶¶ 204-43.  Mr. Bevan also has coordinated directly with counsel for the *Williams* plaintiffs, including by providing quotes to news outlets regarding that case. *See* Jef Feeley & David Voreacos, *Scientist's Testimony for Dying Daughter Roils Chemical Giant*, Bloomberg, Sept. 3, 2015, https://www.bloomberg.com/news/articles/2015-09-03/for-basf-huge-potential-liability-emerges-years-after-takeover.   According to plaintiffs, beginning in early 1990s, Engelhard and Cahill allegedly made statements to Bevan that Emtal talc did not contain asbestos and concealed contrary evidence. Ex. A (SAC. ¶¶ 205-18, 225-26).  Allegedly relying upon Engelhard's statements, Bevan "recommended to its asbestos injury clients that Engelhard be voluntarily dismissed from their claims." *Id.* ¶ 220.

According to the *Williams* complaint, plaintiff Williams and other Bevan clients allegedly relied upon Bevan's legal advice to voluntarily dismiss their claims against Engelhard. *Id.*; *see also* Ex. B (12/23/16 K. Williams Resp. to BASF's Interrog. No. 12) ("My husband and I relied upon Mr. Bevan and agreed to his recommendation.").   Thousands of Bevan's other asbestos clients, including decedents of named plaintiffs Pease, Holley, and Ware, allegedly settled with Engelhard in multi-party aggregate settlements involving numerous talc supplier and other defendants. Ex. A (SAC ¶ 227).  In plaintiffs' own words, "[w]hen negotiating ... aggregate settlements and deciding to recommend and obtain ·its clients' consent and authorization to participate in them, the Bevan Law Firm reasonably relied and acted upon Cahill Gordon's and BASF's (or its predecessors') representations ... that purported to show Engelhard's talc did not contain asbestos." *Id.* ¶ 228.  Pease, Holley, Ware, and other Bevan clients in turn relied on Bevan's legal advice and agreed to aggregate settlement amounts. *Id.* ¶ 229.

According to plaintiffs, had Engelhard and its lawyers "fairly and timely disclosed the truth about its talc products' asbestos content ... the Bevan law firm then *would not have recommended to its clients*, including Plaintiff Williams and her late husband, that they voluntarily dismiss their asbestos claim against [Engelhard]." *Id.* ¶ 223 (emphasis added). Similarly, the complaint alleges that "the Bevan law firm would not have negotiated and agreed to the terms of the aggregate settlements with BASF or its predecessors on the terms that were offered, and, further, *it would not have recommended to [other] clients* that they agree to participate in such aggregate settlements with Engelhard." *Id.* ¶ 230 (emphasis added); *see also id.* ¶ 12.[3]

### C. BASF's Subpoena And Bevan's Failure To Produce Documents In Response

On November 21, 2016, BASF served Bevan with a third-party subpoena requesting production of documents relating to Bevan's representation of Ohio plaintiffs (and their decedents) in the *Williams* case. *See* Ex. C (11/21/16 BASF Subpoena to Bevan & Assocs.). On December 9, 2016, the *Williams* plaintiffs and Bevan objected to the subpoena. *See* Ex. D (12/9/16 Plaintiffs' Objs. to BASF Subpoena to Bevan & Assocs.); Ex. E (12/9/16 Bevan & Assocs. Resp. to BASF Subpoena to Bevan & Assocs.). Bevan agreed to produce certain documents, but refused to produce privileged documents or information about putative class members whom it may have represented. *Id.*

On January 16, 2017, BASF identified deficiencies in Bevan's responses and reminded

---

[3] Plaintiffs' allegations of reliance are directly contradicted by the fact that Bevan continued to file multiple lawsuits against Engelhard even after receiving the purported misrepresentations about Emtal talc. *See* Ex. A (SAC ¶¶ 24-25, 27-28, 205-17). The outcome of the named plaintiffs' cases also differed. As discussed above, according to the allegations of the complaint, some Bevan cases against Engelhard were dismissed, but others were settled. Named plaintiff Wengerd's decedent, another former Bevan client, did not voluntarily dismiss or settle her asbestos claim against Engelhard despite allegedly receiving identical statements concerning the absence of asbestos in Emtal talc. *See id.* ¶ 238. Rather, she proceeded to litigate her suit until the court dismissed it. Plaintiff Wengerd claims that dismissal was the "direct and proximate result" of Engelhard's misstatements. *Id.* ¶ 242.

4

Bevan that it had not produced any responsive documents, despite agreeing to do so. *See* Ex. F (1/16/17 P. Farrell Ltr. to P. Walsh). Bevan's attorneys responded that BASF's "request for settlement and extensive other confidential client information is not relevant to the claims asserted by Mrs. Williams and the four other Bevan clients in the *Williams* suit," that BASF was not permitted to "obtain document discovery from the Bevan law firm's client files concerning putative absent class members," and that the requested documents are protected by the attorney-client privilege. *See* Ex. G (2/15/2017 B. Little Ltr. to P. Farrell at 1-2). Bevan now refuses to produce *any* documents in response to BASF's subpoena, despite its prior representations. *Id.* at 2. During a recent email exchange, Bevan continued to refuse to comply with BASF's subpoena, identified no documents it was willing to produce, and failed to show any willingness to relax its objections to BASF's subpoena. Ex. H (3/20/17 P. Farrell Email to B. Little). This motion to enforce follows.

## ARGUMENT

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); *see also Rui He v. Rom*, 2016 WL 909405, at *2 (N.D. Ohio Mar. 10, 2016). "Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 406 (N.D. Ohio 2011). "The same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

BASF's subpoena seeks documents vital to the claims and defenses in the *Williams* case,

which involves particular allegations about Bevan and its former clients. Bevan's privilege objections are meritless and should be overruled because the *Williams* plaintiffs have put attorney-client communications directly at issue, and thus have waived their privilege. Finally, production of the requested documents is reasonable and does not create an undue burden.

## I.   BASF'S SUBPOENA SEEKS DOCUMENTS THAT ARE HIGHLY RELEVANT TO THE CLAIMS AND DEFENSES IN *WILLIAMS*

The *Williams* plaintiffs have placed Bevan, its decision-making, and its advice at the epicenter of their case against BASF. *See* Ex. A (SAC ¶¶ 205-20, 225-29, 232-36). The Ohio named plaintiffs have alleged that Bevan would have made different strategic decisions—and thus that the decedents would have obtained greater recovery in the underlying asbestos cases—had Engelhard and its then-counsel, Cahill, provided information concerning alleged asbestos in Emtal talc. *E.g., id.* ¶¶ 6, 12, 19. As a result, Bevan's files are inextricably intertwined with the *Williams* litigation and are directly relevant to the named plaintiffs' claims and purported class.

### A.   BASF's Subpoena Seeks Documents Pertaining To The Named Ohio Plaintiffs That Are Highly Relevant to the *Williams* Litigation

BASF seeks discovery essential to evaluating the viability of the pending *Williams* claims: documents in Bevan's files about the litigation and resolution of underlying asbestos claims of the named Ohio plaintiffs' decedents. Bevan's relevance objections to these requests cannot be squared with the named plaintiffs' claims in *Williams*. In its letter objecting to BASF's subpoena, Bevan claims that "[BASF's] request for settlement and extensive other confidential client information is not relevant to the claims asserted by Mrs. Williams and the four other Bevan clients in the *Williams* suit." Ex. G (2/15/17 B. Little Ltr. to P. Farrell at 1). That allegation blinks reality.

The *Williams* plaintiffs' unprecedented theories of liability place Bevan's decision-making, advice, and recommendations at the forefront of the case. Plaintiffs specifically allege

that "[b]ased upon the Bevan Law Firm's recommendations and advice, which in turn were based upon the documents and representations made by and on behalf of the defendants that BASF's talc and talc products contained no asbestos," Ex. A (SAC ¶ 220), the Ohio named plaintiffs dismissed or settled their cases against Engelhard, or suffered an involuntary dismissal.

Under any conception of relevance, let alone the permissive discovery standard set by Rule 26(b)(1), BASF is entitled to discovery concerning Bevan's "recommendations and advice" to assess those allegations, and "in turn," what the advice was "based upon." If, for example, Bevan did not rely on Engelhard's alleged misstatements, if there were concerns about the validity or merit of the underlying claims against Engelhard, or if Bevan advised its clients to dismiss or settle with Engelhard for reasons other than the asserted absence of asbestos in Emtal talc (perhaps because Bevan was skeptical about the viability of its client's case or because it was packaging settlements with multiple talc defendants at once regardless of the composition of their talc), then plaintiffs' claims would fail. At the very least, BASF is entitled to test the plaintiffs' allegations on these issues in discovery in order to prepare its defense.

Moreover, plaintiffs purport to bring claims for fraud and fraudulent concealment under New Jersey law.[4] Plaintiffs' fraud claims require them to show "reasonable reliance" and "resulting damage" from Engelhard and Cahill's alleged misrepresentations. *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005). Here, not only do plaintiffs base their claims on their own decisions in prior asbestos cases, but plaintiffs explicitly invoke what Bevan considered and relied upon during asbestos litigation against Engelhard. Plaintiffs allege, for example, that defendants "misled numerous asbestos injury claimants *and their counsel*,

---

[4] As BASF repeatedly has emphasized throughout the *Williams* case, BASF does not believe that New Jersey law can apply to claims by the named plaintiffs, who are Ohio and New York residents alleging fraud in past litigations that occurred in Ohio and New York. But BASF once again for present purposes only assumes that New Jersey law applies, as part of addressing plaintiffs' allegations as pleaded. *See, e.g.*, Ex. A (SAC ¶ 292) (alleging that New Jersey law applies).

including the representative Plaintiffs and *their counsel*, into naturally and reasonably believing there was no evidence that Engelhard's talc products contained asbestos that could support an injury compensation claim against BASF." Ex. A (SAC ¶ 12) (emphasis added); *see also, e.g., id.* ¶ 29 ("Plaintiffs and members of the Class, *as did their counsel*, naturally, reasonably and detrimentally relied upon the above misrepresentations and omissions.") (emphasis added); *id.* ¶ 220 ("[T]he Bevan Law Firm's recommendations and advice ... were based upon the documents and representations made by and on behalf of the defendants ...."). To be able to test these reliance allegations, BASF needs Bevan's documents.

In addition, and with respect to the separate tort of fraudulent concealment, New Jersey law does not permit a cause of action for fraudulent concealment in a vacuum, but rather requires plaintiffs to prove that the alleged concealment would have made a material difference in their underlying cases. *See Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1188-90 (N.J. 2008); *Rosenblit v. Zimmerman*, 766 A.2d 749, 758 (N.J. 2001). Thus plaintiffs must show that they were "damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed." *Rosenblit*, 766 A.2d at 758; *see also id.* ("[P]laintiff will be required to establish the elements of the tort of fraudulent concealment. To do so, the fundamentals of the underlying litigation will also require exposition."). Documents from Bevan's files bear directly on "the fundamentals of the underlying litigation," *id.*, and are thus plainly relevant to the named Ohio plaintiffs' fraudulent concealment claims in *Williams*.

This is especially true for BASF's request for documents concerning plaintiffs' settlements. Three of the Ohio named plaintiffs allege that their decedents settled their lawsuits against Engelhard and its subsidiaries *in reliance on* Bevan's advice. *See* Ex. A (SAC ¶ 22 (Plaintiff Pease); ¶ 25 (Plaintiff Holley); ¶ 28 (Plaintiff Ware)). Having claimed that their

decedents' past settlements with Engelhard were affected by fraud, plaintiffs have opened the door to examination of the circumstances giving rise to those settlements, including why Bevan recommended and entered the settlements, what information it relied upon, what information it transmitted to the decedents, and so on. *See, e.g., DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684 (D. Kan. 2004) (settlement agreements discoverable because they relate to an "important issue in this case"); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) ("Plaintiff's own description of its lawsuit demonstrates that the settlement agreement is relevant.").

Given the central role Bevan plays in plaintiffs' theories of fraud and fraudulent concealment, BASF has requested several categories of documents pertaining to Bevan's litigation and resolution of cases against Engelhard. *See* Ex. C (11/21/16 BASF Subpoena to Bevan & Assocs. No. 4-9, 11, 17-18). These documents bear directly on the extraordinary claims that plaintiffs are pursuing in the *Williams* action. BASF is entitled to explore whether Engelhard's purported misstatements actually motivated the named Ohio plaintiffs' settlements and dismissals that underlie the *Williams* action, or whether other considerations informed the resolution of those underlying cases—*e.g.*, the named Ohio plaintiffs could not identify Emtal talc as present in their factories, or they did not actually suffer from an asbestos-related disease, or confronted a multitude of other failures of proof, etc.

**B.    Documents Concerning Bevan's Handling Of Asbestos Claims Against Engelhard Are Relevant To The Class Certification Issues In *Williams***

In addition to bearing on core issues concerning the merits of plaintiffs' fraud and fraudulent concealment claims, documents relating to Bevan's handling of asbestos claims against Engelhard, and Bevan's rationale for dismissing, settling, or not bringing those claims, are central to the named plaintiffs' theory of class certification in *Williams*. *See, e.g., Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 349-52 (2011), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Discovery regarding the identity of the class members and the nature of their claims is plainly proper. *See, e.g., Schweinfurth v. Motorola, Inc.*, 2008 WL 4449081, at *1 (N.D. Ohio Sept. 30, 2008) (granting motion to compel discovery regarding identity and nature of claims of putative class members); *Hastings v. Asset Acceptance, LLC*, 2007 WL 461477, at *3 (S.D. Ohio Feb. 7, 2007) (same); *Nash v. City of Oakwood, Ohio*, 90 F.R.D. 633, 637 (S.D. Ohio 1981) (same). That Bevan is a third party is irrelevant; the requested discovery concerning the class is demonstrably relevant. *See Taylor v. Universal Auto Grp. I, Inc.*, 2015 WL 1810316, at *6, *8 (S.D. Ohio Apr. 17, 2015) (denying the nonparty's motion to quash because "the discovery sought ... is relevant for purposes of identifying the members of the proposed class" and "is relevant to establishing the typicality, commonality, and predominance factors for class certification").

Here, Bevan's files will allow BASF and the *Williams* Court to evaluate whether the requirements of Rule 23 are met. *See* Fed. R. Civ. P. 23(a)(2), 23(a)(3), 23(b)(3). Both the United States Supreme Court and the Third Circuit, where the *Williams* case is pending, have expressly recognized that personal-injury claims for asbestos exposure involve complex and plaintiff-specific questions of causation that make them generally unsuitable for classwide resolution. *See, e.g., Windsor*, 521 U.S. at 624-26; *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626-27 (3d Cir. 1996). BASF expects that, like the proposed classes in *Windsor* and *Georgine*, the putative class here will not satisfy the requirements of Rule 23(a) because the class members' underlying asbestos lawsuits rested on individualized factual and legal determinations related to their alleged injuries, purported asbestos exposure levels, product identification, and other potentially dispositive issues. The information that Bevan currently refuses to produce

relates to whether any alleged withholding of evidence in plaintiffs' decedents' underlying cases materially affected those cases in any uniform way that could allow for class certification.  BASF expects the answer to be "no," but at the very least, BASF is entitled to discover Bevan's documents to test plaintiffs' request for class certification.

Moreover, documents concerning Bevan's "thousands of other tireworker and industrial worker clients," Ex. A (SAC ¶ 224), will assist BASF and the *Williams* Court in identifying class members and in addressing class certification issues.  The claimed nationwide "Fraudulent Asbestos Defense Scheme" in *Williams* allegedly had a significant impact on Bevan and its other asbestos clients, which included "thousands of other tireworker and industrial worker clients." *Id.* ¶ 224.  At the core of the *Williams* complaint is the assertion that defendants' purported misstatements caused Bevan to settle, dismiss, or fail to file numerous lawsuits against Engelhard on behalf of unidentified plaintiffs.  *See id.* ¶ 220 ("Shortly after receipt of [Defendants' representations], the Bevan Law Firm proceeded to recommend to its asbestos injury clients that Engelhard be voluntarily dismissed from their claims"); *id.* ¶ 223 (similar). Although the *Williams* complaint does not identify Bevan's additional clients by name, the actions Bevan took or did not take on behalf of those clients are central to plaintiffs' theory of fraud and fraudulent concealment.  BASF is entitled to documents reflecting the bases for the Bevan litigation decisions that plaintiffs have placed directly at issue.

Bevan's refusal to provide basic discovery concerning the underlying asbestos plaintiffs, including even their names, only compounds these class-certification issues by preventing BASF and the Court from measuring the proposed *Williams* class against the requirements of Rule 23.

## II. PLAINTIFFS HAVE WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGE BY PUTTING "AT ISSUE" THE LEGAL ADVICE THEIR DECEDENTS RECEIVED FROM BEVAN

Bevan also objects to BASF's requested documents on privilege grounds, claiming that

the "client, not the attorney, owns the file and applicable privileges," and that those privileges have not been waived. Ex. G (2/15/17 B. Little Ltr. to P. Farrell at 2).  That is incorrect because the *Williams* plaintiffs (including the five former Bevan clients) have placed privileged communications and work product directly at issue in their complaint.

It is well settled that a party waives the attorney-client privilege by affirmatively placing otherwise-protected documents at issue in litigation.  *See, e.g.*, *Grace v. Mastruserio*, 912 N.E.2d 608, 613 (Ohio Ct. App. 2007) (holding that privilege waiver applies when, "through [an] affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case," and where "application of the privilege would deny the opposing party access to information vital to its defense").  Where such a waiver has occurred, it encompasses "all other communications [with] the attorney on the same matter."  *In re G-I Holdings*, 218 F.R.D. at 432.  The same principle applies with respect to waiver of the attorney work-product doctrine.  *See Squire, Sanders & Dempsey LLP v. Givaudan Flavors Corp.*, 937 N.E.2d 533, 546 (Ohio 2010); *see also Ford Motor Co. v. Edgewood Props., Inc.*, 2010 WL 2516461, at *4 (D.N.J. June 14, 2010).

Here, the *Williams* plaintiffs' waiver of the attorney-client privilege and attorney work-product protection is patent.  Plaintiffs have squarely "placed the protected information" regarding their attorney communications "at issue by making it relevant to the case."  *Grace*, 912 N.E.2d at 613; *see also Meshulam v. Meshulam*, 2016 WL 4080760, at *7 (N.J. Super. Ct. App. Div. Aug. 1, 2016) (recognizing that the waiver applies when a party "assert[s] that he or she was fraudulently induced to settle litigation").  As described above, the *Williams* plaintiffs, including Bevan's former clients, have made a number of allegations that place their communications with counsel directly at issue.  *See* Ex. A (SAC ¶¶ 12, 19, 223, 228, 230).  In light of these allegations,

the *Williams* plaintiffs cannot withhold documents related to their underlying asbestos cases on the basis of the attorney-client privilege because they have "inject[ed] the advice of counsel as an issue in the litigation." *Glenmede Trust Co.*, 56. F.3d at 486; *see also Grace*, 912 N.E.2d at 613; *accord Meshulam*, 2016 WL 4080760, at *7. What Bevan in the underlying asbestos cases knew about Emtal talc and why it made particular decisions to bring, settle, or dismiss Ohio cases is directly at issue in the *Williams* plaintiffs' complaint.

Waiver of the attorney-client privilege is particularly appropriate here because allowing the *Williams* plaintiffs to evade BASF's discovery "would deny [BASF] access to information vital to its defense." *Grace*, 912 N.E.2d at 613. As part of responding to the *Williams* plaintiffs' allegations, BASF is entitled to know what Bevan knew about Emtal talc and why it settled or dismissed particular cases. BASF intends to show that any alleged withholding of evidence in the *Williams* plaintiffs' decedents' underlying cases did not materially affect those cases—and certainly not in any uniform way that could allow for class certification. Among other things, that is because the *Williams* plaintiffs' decedents' underlying asbestos claims against Engelhard were meritless to begin with. For example, BASF believes that many of those decedents did not even have an asbestos-related disease, were not exposed to Emtal talc, or were not exposed to Emtal talc in doses sufficient to contribute to disease, among other considerations which pertain to the merits of their claims. The privileged materials will bear on these issues.

Moreover, in light of their allegations, the *Williams* plaintiffs have opened the door to BASF conducting discovery on the fact that it was inconsequential to Bevan whether Emtal talc contained asbestos. That is because, for example: Bevan indiscriminately settled claims against all talc manufacturers (even those with known asbestos-containing talc) for the same low-dollar amounts; Bevan did not rely on any asserted misrepresentations regarding Emtal talc; and Bevan

had various reasons other than the presence or absence of asbestos in Emtal talc for dismissing cases and agreeing to the low-dollar/high-volume settlements that were the hallmarks of the often abusive asbestos mass tort actions of the 1980s and 1990s, of which the *Williams* plaintiffs' decedents' cases were a part. *See, e.g., Raymark Indus., Inc. v. Stemple*, 1990 WL 72588, at *22 (D. Kan. May 30, 1990); Am. Bar Ass'n, Comm'n on Asbestos Litig., Report to the House of Delegates, at 13 (Feb. 2003).

At the very least, BASF is entitled to disprove the *Williams* plaintiffs' allegations that Bevan relied or made (or failed to make) particular litigation decisions in the underlying asbestos cases based on certain alleged misstatements.  Because they have put their own and Bevan's thought processes and communications directly at issue, if the *Williams* plaintiffs intend to proceed with this lawsuit, they need to produce the privileged materials relating to their decedents' underlying asbestos lawsuits. *See, e.g., Grace*, 912 N.E.2d at 613; *Glenmede Trust Co.*, 56. F.3d at 486; *In re G-I Holdings*, 218 F.R.D. at 432; *Meshulam*, 2016 WL 4080760, at *7.  Any other result would be remarkably unfair to BASF, as well as the other defendants in this case.  The *Williams* plaintiffs have made strident allegations about Engelhard and Cahill allegedly perpetrating a fraudulent scheme, and BASF should be permitted to rebut those allegations with privileged communications that plaintiffs' complaint puts directly at issue.

## III.    BASF'S SUBPOENA DOES NOT IMPOSE AN UNDUE BURDEN ON BEVAN

Finally, Bevan's claims of burden are purely boilerplate and should be rejected. *See* Ex. G (2/15/17 B. Little Ltr. to P. Farrell at 2).  Bevan has identified no particular document request that is unduly burdensome and provides no details as to the nature of the expected burden, such as the volume of responsive documents or the time it would take to review them.    In fact, it is not apparent that Bevan has done anything to evaluate its potential burden aside from reciting that it must conduct "document review and [expend] attorney time for discovery that is properly

directed at the *Williams* plaintiffs." *See id.* A "bare assertion" of undue burden is "insufficient to permit refusal to comply with [a] subpoena in its entirety." *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013); *see also Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. In*s. Co., 2011 WL 4507417, at *4 (E.D. Mich. Sept. 29, 2011) (holding that a responding party "cannot rely on a mere assertion that compliance would be burdensome") (quoting 9A Wright & Miller, *Federal Practice and Procedure* § 2463.1). Further, the subpoena is properly directed towards Bevan because BASF seeks documents in Bevan's custody, control, or possession, including documents concerning the bases for Bevan's legal advice to its clients to settle, dismiss, or not bring claims against Engelhard.

Finally, to the extent Bevan refuses to produce documents on the basis of confidentiality, *see* Ex. G (2/15/17 B. Little Ltr. to P. Farrell at 1, 2), that objection is misplaced. If documents are confidential, a suitable confidentiality order can be put in place. The parties in *Williams* currently are in fact already in agreement on such an order and have presented it to the *Williams* Court. The asserted confidentiality of documents does not prevent production of the requested documents. *See, e.g., R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010); *FTC v. Chemence, Inc.*, No. 16 CV 228, 2016 WL 3960492, at *2 (N.D. Ohio July 19, 2016).

## CONCLUSION

For the foregoing reasons, BASF respectfully requests the Court to enforce the subpoena and compel Bevan to respond to BASF's requests. As noted, BASF has separately moved to transfer this proceeding to the *Williams* Court and Bevan has agreed to the transfer.

This the 20th day of March, 2017.

Matthew D. Ridings (Bar No. 0079402)
John R. Mitchell (Bar No. 0066759)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Tel.: (216) 566-5847
Fax: (216) 566-5800
Matt.Ridings@TompsonHine.com
John.Mitchell@ThompsonHine.com
*Counsel for Defendant*
*BASF Catalysts LLC*

## CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 37, the undersigned, as counsel for BASF, hereby certifies that the movant has in good faith conferred with counsel for Bevan in an attempt to resolve the disputes raised herein by seeking the discovery at issue without Court action. As set forth in the Memorandum of Law in Support of BASF Catalyst LLC's Motion to Enforce Subpoenas Duces Tecum, despite counsel for BASF's reasonable efforts to confer with counsel for Bevan, the parties were unable to resolve the discovery dispute at issue.

This the 20th day of March, 2017.

Peter A. Farrell
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel.: (202) 879-5000
Fax: (202) 879-5200
peter.farrell@kirkland.com
*Counsel for Defendant
BASF Catalysts LLC*

## CERTIFICATION OF SERVICE

I certify that on this day counsel for the following parties were served by First Class United States Mail with Defendant BASF Catalysts LLC's Motion to Enforce Subpoena Duces Tecum and the supporting Memorandum of Law:

Christopher M. Placitella, Esquire
Micheal Coren, Esquire
COHEN PLACITELLA & ROTH PC
127 Maple Avenue
Red Bank, NJ 07701
*Attorneys for Plaintiffs*

John K. Villa, Esquire
David S. Blatt, Esquire
Grant A. Geyerman, Esquire
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Robert E. Ryan, Esquire
Marc D. Haefner, Esquire
Craig Demareski, Esquire
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, NJ 07068
*Attorneys for Defendants Cahill Gordon &*
*Reindel LLP,*
*Cahill Gordon & Reindel, Howard Sloane,*
*and Ira J. Dembrow*

Eric Tunis, Esquire
HEROLD LAW, P.A.
25 Independence Boulevard
Warren, NJ 07059
*Attorneys for Defendant Thomas D. Halket*

Kevin Marino, Esquire
John A. Boyle, Esquire
MARINO, TORTORELLA & BOYLE PC
437 Southern Blvd.
Chatham, NJ 07928
*Attorneys for Defendant Arthur A.*
*Dornbusch II*

Brendan E. Little
LEVY KONIGSBERG LLP
800 Third Avenue
New York, NY 10022
*Attorneys for Third Party Bevan &*
*Associates LPA, Inc.*

Matthew D. Ridings

Dated: March 20, 2017

17