# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **KIMBERLEE WILLIAMS, et al.** | Misc. Case No. |
| Plaintiffs, | JUDGE |
| vs. | (This action is pending before the United States District Court for the District of New Jersey, Case No. 2:11-cv-01754 (JLL) (JAD)) |
| **BASF CATALYSTS LLC, et al.** | |
| Defendants. | CIVIL ACTION |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT BASF CATALYSTS LLC'S MOTION TO ENFORCE SUBPOENA DUCES TECUM SERVED ON BEVAN & ASSOCIATES LPA, INC. AND THOMAS W. BEVAN**

**BEVAN & ASSOCIATES LPA, INC.**
  Anjali A. Mehta, Esq.  (0085569)
  6555 Dean Memorial Pkwy
  Boston Heights, OH 44236
  (Tel): 330-650-0088
  (Fax): 330-467-4493

**COHEN, PLACITELLA & ROTH, P.C.**
  Jared M. Placitella, Esq.
  (Pro Hac Vice pending)
  127 Maple Ave
  Red Bank, New Jersey 07701
  (Tel): (732) 747-9003
  (Fax): (732) 747-9004

**FOX ROTHSCHILD LLP**
  Jeffrey M. Pollock, Esq.
  Princeton Pike Corporate Center
  997 Lenox Drive, Building 3
  Lawrenceville, NJ 08648
  (Tel): (609) 896-3600
  (Fax): (609) 896-1469

*Attorneys for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

I.      INTRODUCTION ............................................................................1

II.     STATEMENT OF MATERIAL BACKGROUND FACTS...........................4

    A.      BASF's and Cahill's deceptive scheme directed against Asbestos Plaintiffs and their Counsel Nationwide. ................................................................4

    B.   BASF and Cahill fraudulently deceived the Bevan Law Firm and in turn Plaintiffs Williams, Pease, Holley, Wengerd and Ware into voluntarily dismissing their cases or settling for amounts far too low. ..................................7

III. LAW AND ARGUMENT ....................................................................9

    A.    The *Subpoena Duces Tecum* BASF served upon the Bevan Law Firm demands discovery well outside the permissible scope and limits of discovery. ..9

    B.   BASF's Bevan Subpoenas seek discovery outside the permissible scope and limits of discovery and therefore BASF's motion should be denied. ..................10

        1.      BASF's Bevan subpoenas seek irrelevant discovery regarding Named Plaintiffs and putative absent class members...................................................12

        2.       Absent Class Member Discovery is Inappropriate. ...............................19

    C.    Plaintiffs Did Not Waive Attorney-Client Privilege And Work-Product Protection......................................................................................22

        1.      There has not been any requisite judicial ruling that Plaintiffs' attorney-client privilege must yield to other societal concerns as required by *In Re Kozlov and progeny* in order to find an implied "at issue" waiver in this case.... 22

        2.      Absent Class Members are passive members of the litigation who cannot be said to have waived the attorney-client privilege and/or work product protection by the fact this suit on their behalf was filed...................................24

    D.    BASF's Bevan Subpoena is Unduly Burdensome and Oppressive. ...........26

V.      CONCLUSION...............................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Bayer AG v. Betachem, Inc.*, 173 F.3d 188 (3d Cir. 1999) ...................................11

*Duncan v. Husted*, No. 13-1157, 2014 U.S. Dist. LEXIS 130266 (S.D. Ohio Sept. 17, 2014) ...................................................................................................11

*In re Centrix Fin., LLC*, No. 12-6471, 2012 WL 6625920, 2012 U.S. Dist. LEXIS 179131 (D.N.J. Dec. 18, 2012) .............................................................11

*In re Lucent Techs. Inc. Sec. Litig.*, No. 00-621, 2002 WL 32815233, 2002 U.S. Dist. LEXIS 24973 (D.N.J. July 16, 2002) .........................................20

*Muslim Cmty. Ass'n v. Pittsfield Twp.,* No. 12-10803, 2014 U.S. Dist. LEXIS 184684 (E.D. Mich. July 2, 2014) ........................................................12

*NE Techs., Inc. v. Evolving Sys.*, No. 06-6061, 2008 WL 4277668, 2008 U.S. Dist. LEXIS 85351 (D.N.J. Sep. 12, 2008) ...............................................12

*Stamy v. Packer*, 138 F.R.D. 412 (D.N.J. 1990) ...............................................12

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) ................................10

**Rules**

Fed. R. Civ. P. 1 ...................................................................................................11

Fed. R. Civ. P. 26 .................................................................................................11

Fed. R. Civ. P. 45(d) ...........................................................................................11

iii

## I.    INTRODUCTION

Defendant BASF Catalysts, LLC ("BASF") has subpoenaed Thomas Bevan, Esq., a practicing attorney in the Ohio area, along with his law firm, Bevan & Associates, LPA (the "Bevan Law Firm"), demanding documents in their respective custody, possession or control relating to asbestos personal injury claims and suits against BASF which they handled in the early 1990s.[1]  Bevan timely filed objections. BASF moves to enforce the subpoena, and further requests the motion be referred and transferred to the United States District Court of New Jersey which is the issuing Court under Rule 45(f). Both the *Williams* Plaintiffs and the subpoenaed parties (Bevan and Bevan Law Firm) assent to such transfer.

The subpoena *duces tecum* before this Court arises out of a putative class action litigation matter pending before the United Stated District Court for the District of New Jersey, presided over by the Hon. Jose Linares, in conjunction with assigned Magistrate Judge Joseph A. Dickson. As explained in more detail below, the New Jersey *Williams* case is an outgrowth of the unearthing in 2009 of a several decades long fraudulent asbestos defense scheme conducted by BASF and its former national coordinating asbestos defense counsel, Cahill, Gordon & Reindel ("Cahill"). The tentacles of BASF's fraud reached here into Ohio to

---

[1] Unless context indicates otherwise, Thomas Bevan and Bevan & Associates, LPA will be referred to herein collectively as "Bevan" or the "Bevan Law Firm".

victimize thousands of Ohio asbestos claimants. As described by Third Circuit

Court of Appeals in passing upon the allegations of the Williams' class action

complaint on appeal and reinstating  the case:

> As pleaded, this lawsuit concerns years of purported deceit by Engelhard and Cahill.  **This action is not itself an asbestos injury case**, but rather an action about Engelhard and Cahill's conduct when they confronted asbestos injury cases in state courts around the country. The alleged scheme outlived most of the original plaintiffs, whose diseases have since taken their lives. It did not last forever. Spurred by recent testimony that Engelhard's talc contained asbestos and that the company knew it, **survivors and successors of the original asbestos-injury suits have brought new claims against Cahill and BASF, Engelhard's successor**.  The crux of their complaint is that BASF and Cahill defrauded them in their initial lawsuits and caused them to settle or dismiss claims that they would otherwise have pursued.
>
> <div align="center">***</div>
>
> BASF and Cahill engineered the false statements and evidence in advance of litigation.  Then, either directly or through local counsel, BASF and Cahill deployed their prefabricated defense against claimants as they arose.  They did not merely use a permissible procedural device in bad faith, as in *Loigman*. 889 A.2d at 437.  They rigged the game from the beginning.

*Williams v. BASF* Catalysts *LLC*, 765 F.3d 306, 311, 319 (3d Cir. 2014) (emphasis

added).[2] Bevan Law Firm clients, including five families who are named plaintiffs

---

[2] The case was before the Third Circuit on the *Williams* Plaintiffs' appeal of the District Court's dismissal of their First Amended Class Action Complaint. On remand following the appeal the case was eventually reassigned to Judge Linares and to Magistrate Judge Dickson. Judge Dickson, oversees discovery in the case. In 2016 Judge Linares ruled upon BASF and its co-defendants' motions to dismiss the Second Amended Class Action Complaint ("SAC"), allowing the *Williams*

<div align="center">2</div>

in the Williams action, are among the victims of BASF's fraudulent asbestos defense scheme.

Should the Court not transfer this enforcement matter as requested, for the reasons set forth herein, BASF's motion should be denied. BASF's document subpoena seeks Bevan Law Firm client files and related documents which fall well outside the parameters of discovery permitted under the Federal Rules of Civil Procedure, particularly as these Rules apply to discovery from a nonparty (Mr. Bevan and the Bevan Law Firm), and in essence from putative absent class members (Bevan Law Firm's other clients who have sued BASF). BASF's subpoenas not only impose a logistical burden and expense on the Bevan Law Firm, but also require it to produce irrelevant and clearly privileged information that Bevan cannot divulge without client consent. BASF's subpoenas are also an improper attempt at absent class member discovery, which is disfavored and generally not allowed absent compelling need, reason, and protections.

---

Plaintiffs' claims of Fraud, Fraudulent Concealment (New Jersey Law's independent tort cause of action for spoliation) and conspiracy to proceed. The case is in active discovery managed by Magistrate Judge Dickson.

## II.    STATEMENT OF MATERIAL BACKGROUND FACTS

### A.    BASF's and Cahill's deceptive scheme directed against Asbestos Plaintiffs and their Counsel Nationwide.

In their Second Amended Complaint ("SAC") and previous submissions addressing the Scope of Discovery, (D.N.J. Dkt. 249), and a related subpoena served on the Rothenberg Law firm and one of its former lawyers, (D.N.J. Dkt. 243), Plaintiffs have detailed—and supported with documents drawn from BASF's litigation files—a fraudulent asbestos defense scheme devised, implemented and controlled by BASF and its co-defendants. These filings, which Plaintiffs incorporate herein, relate how from as early as 1979, BASF and its then outside counsel, Cahill had knowledge and concern that BASF faced substantial, potentially ruinous asbestos claims liability exposure connected to its Emtal talc products, which were distributed widely across the country to many industries. Indeed, from their involvement in a tire worker mesothelioma suit filed in Rhode Island in 1979, the *Westfall* case, BASF and Cahill saw first-hand how BASF's own internal documents, such as those concerning talc tests and assays on Emtal and Johnson mine ore, as well as testimony of members of BASF's R&D Department, such as that of its Vice-President in charge of research and development, Dr. Glen Hemstock, could establish that Emtal contained asbestos and caused injuries to those exposed to it.

4

BASF and Cahill's response to this asbestos litigation problem is what this case is all about. They responded beginning sometime in 1983 by: (1) settling the *Westfall* case with a confidentiality agreement; (2) reacquiring the damaging documents it produced during discovery in the case; (3) gathering up the *Westfall* deposition transcripts of its employees; (4) collecting the evidence *Westfall* plaintiff's expert (Dr. Glassley) had developed; and, (5) thereafter, either destroying or concealing this massive amount of damaging evidence so that it could not be used in subsequent asbestos injury suits.

As part of the scheme, in March of 1984, BASF's staff at its New Jersey headquarters, as well as those located elsewhere, including at the Johnson mine facility, gathered up all of BASF's internal documents relating to Emtal, which were then either destroyed or secreted away so as to not be available to claimants or anyone else. Included in this gathering and purge were all originals of test and assay results. Documents which could exonerate BASF when subsequently sued, however, were exempted from the purge and kept at hand. This marshalling and selective purge of documents was orchestrated and executed all-the-while BASF and Cahill foresaw and anticipated more asbestos litigation to come. The purge was intended to disrupt thousands of future asbestos claimants from successfully pursuing their claims in court. In the Third Circuit's words, BASF and Cahill "rigged the game from the beginning." *Williams,* 765 F.3d at 319-20.

When the foreseen asbestos cases eventually began to pour in during the late 1980s, BASF and Cahill began executing the next phase of their fraudulent asbestos defense scheme. They routinely and universally in communications to asbestos claimants counsel and asbestos courts, in responses to discovery and in court filings refused to acknowledge anything whatsoever that Emtal, despite what BASF and Cahill knew, contained asbestos fibers. Instead, and for the next two decades, BASF and Cahill had every one of BASF's defense lawyers (including Cahill associates and partners) make the following two false and misleading representations to each and every asbestos claimants' counsel in letters and in the course of responding to discovery: (1) there was not any asbestos in Emtal talc; and (2) there was not any evidence that Emtal talc contained asbestos. (*See e.g.* documents filed in support of Rothenberg Motion to Quash [Dkt. 243]).

To corroborate these falsehoods, BASF and Cahill obtained an affidavit from William Ashton, a Johnson & Johnson employee, attesting that based on studies on Vermont talc, the Vermont mine was free from contamination of any asbestos. It also created a series of affidavits from a BASF Employee, Charles Carter, which attested to, among other things, there were no test results other than what were mentioned in the Ashton Affidavit.

BASF's and Cahill's fraudulent asbestos scheme was highly successful for over two decades. On the basis of its fraudulent misrepresentations, they convinced

6

the Rothenberg Firm in 1989 to drop BASF (then known as Engelhard) from its asbestos cases in suit and not further file any others against BASF. With that prize in hand, BASF's lawyers across the country then systematically trumpeted the Rothenberg Firm's dismissal to other claimant lawyers as precedent and reason to accept BASF's representations and seemingly corroborating affidavits and likewise dismiss BASF. As the documents referred to and attached to the SAC and submitted in connection with Plaintiffs' recent submission show, thousands of cases were terminated on the basis of BASF's fraudulent statements, including the six representative plaintiffs before the Court.

**B. BASF and Cahill fraudulently deceived the Bevan Law Firm and in turn Plaintiffs Williams, Pease, Holley, Wengerd and Ware into voluntarily dismissing their cases or settling for amounts far too low**.

Five of the many unfortunate victims of BASF's fraudulent asbestos defense scheme are Plaintiffs Kimberlee Williams ("Williams"), Nancy Pease ("Pease"), Marilyn Holley ("Holley"), Donna Ware ("Ware") and Donnette Wengerd ("Wengerd"). These five named Plaintiffs' respective decedents all suffered an asbestos-related disease and subsequently passed away. All five Plaintiffs and/or their respective decedents filed an asbestos personal injury claim against BASF's predecessor Engelhard or one of its subsidiaries (collectively referred to as "BASF").

As a result of the fraudulent asbestos defense scheme described above, Plaintiff Williams's decedent's case was voluntarily dismissed after BASF's misrepresentations and concealment of evidence relating to the asbestos-content of its Emtal talc. In each case filed against Engelhard/BASF in Ohio, BASF would represent and maintain that the talc from the Johnson mine that it marketed, sold and distributed did not contain asbestos. *See* Response of Defendants Pita Realty Limited, Eastern Magnesia Talc Company, and Engelhard Corporation to Plaintiffs' Questionnaire and First Request for Production of Documents attached hereto as Exhibit "A". The result of the fraud to these plaintiffs was as BASF and Cahill designed and intended: outright dismissals of the claim in some instances; cheap token settlements in many others; and involuntary dismissals in some. For example, Williams received no compensation from BASF for dismissing her claims. Plaintiff Wengerd's decedent's case was dismissed on BASF's motion for summary judgment after she refused to voluntarily dismiss her claim. And Plaintiffs Pease's, Holley's and Ware's respective decedent's cases were settled for nominal consideration from BASF based on BASF's misrepresentations that its talc did not contain asbestos.

Thus before the court is a clear cut case of spoliation and fraud. BASF and Cahill's spoliation and misrepresentations hampered Named Plaintiffs claims and lawsuits through lies concerning the first and foremost issue in each and every

8

asbestos products liability case – the existence of asbestos in the product. As the Third Circuit Court of Appeals observed in *Williams*: "What could be more important to a claim that talc caused asbestos disease than proof that the talc contained asbestos?" 765 F.3d at 311.

Following the unearthing of the spoliation and fraud in the New Jersey Superior Court *Paduano* case and the named Plaintiffs here learning they had been targeted and victimized by the fraud, the present suit was commenced seeking individual and class-wide damages for fraudulent concealment and fraud against all Defendants. The Third Circuit carefully reviewed the facts set forth in the SAC and ruled that Plaintiffs' class action claim for fraudulent concealment and fraud should go forward making clear that the present case does not involve the retrial of the claims and defenses of the cases that were wrongfully dismissed.

## III. LAW AND ARGUMENT

### A. The *Subpoena Duces Tecum* BASF served upon the Bevan Law Firm demands discovery well outside the permissible scope and limits of discovery.

The preceding summarizes how BASF and Cahill deliberately targeted, lied to, and defrauded the Bevan Law Firm and the *Williams* Plaintiffs (specifically, Plaintiffs Williams, Pease, Holley, Ware and Wengerd). On receipt of the subpoena both the *Williams* Plaintiffs and the Bevan Law Firm timely and appropriately objected to BASF's subpoena *duces tecum* in which it demands that the Bevan Law Firm, who is not a party to this case, interrupt its law practice to

search for, retrieve, review and produce former client information and materials

not only as to the long closed Williams, Pease, Holley, Ware and Wengerd files,

but from client files relating to the Bevan Law Firm's other asbestos clients.[3] That

is, the documents sought by BASF are not limited to just the Named Plaintiffs'

cases, but it also seeks documents and information on each and every other case

that the Bevan Law Firm ever filed against BASF. BASF demands this discovery

without regard or respect for the obvious fact the materials are subject to attorney-

client and work-product privileges, which require client permission to disclose, are

burdensome to retrieve and review prior to production, and are overwhelmingly for

the most part completely irrelevant or where relevant to such minimal degree that

the Court should deny BASF's motion to enforce its subpoena *duces tecum*

outright and summarily.

> **B.** **BASF's Bevan Subpoenas seek discovery outside the permissible scope and limits of discovery and therefore BASF's motion should be denied.**

The scope of discovery is not unlimited. *Bayer AG v. Betachem, Inc.*, 173

F.3d 188, 191 (3d Cir. 1999); *see United States v. Markwood*, 48 F.3d 969, 982

(6th Cir. 1995) (Rule 26 does "not give a party the right to unlimited

---

[3] The *Williams* Plaintiffs have standing to object as the discovery sought involved the putative absent class members as well as in Plaintiffs Williams', Pease's, Holley's, Ware's and Wengerd's situations, privileged matter concerning their and their respective decedent's estate legal matter.

discovery...."). "If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash . . . ." *In re Centrix Fin., LLC*, No. 12-6471, 2012 WL 6625920, 2012 U.S. Dist. LEXIS 179131, at *15 (D.N.J. Dec. 18, 2012); *see Duncan v. Husted*, No. 13-1157, 2014 U.S. Dist. LEXIS 130266, at *9 (S.D. Ohio Sept. 17, 2014) (noting the court has discretion to quash a subpoena where the documents requested fall outside the scope of discovery). BASF's Subpoena to the Bevan Law Firm falls well outside the permissible discovery scope and limits established by the Federal Rules of Civil Procedure for several reasons. *See* Fed. R. Civ. P. 1 (requiring court rules of procedure "be construed, administered, and employed by… parties to secure the just, speedy, and inexpensive determination of…proceeding); Fed. R. Civ. P. 26 (limiting scope of discovery to non-privileged relevant matter proportional to the needs of the case); Fed. R. Civ. P. 45(d) ("party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

1.    **BASF's Bevan subpoenas seek irrelevant discovery regarding Named Plaintiffs and putative absent class members.**[4]

Discovery must be relevant to the claims and legitimate defenses at issue in the case. *NE Techs., Inc. v. Evolving Sys.*, No. 06-6061, 2008 WL 4277668, 2008 U.S. Dist. LEXIS 85351, at *11–12 (D.N.J. Sep. 12, 2008). "[I]t should be noted that the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990); *see also Muslim Cmty. Ass'n v. Pittsfield Twp.,* No. 12-10803, 2014 U.S. Dist. LEXIS 184684, at *11 (E.D. Mich. July 2, 2014) ("[T]his Court agrees that non party subpoenas ought to 'require a stronger showing of relevance than for simple party discovery'"). On the issue of relevance, Plaintiffs submitted invited position statement on the scope of discovery ("Scope of Discovery Submission") to the United States District Court for the District of New Jersey as well as a response

---

[4] Throughout the majority of its brief, BASF specifically references Named Plaintiffs Williams, Pease, Holley, Ware and Wengerd and makes its arguments relating to the documents it seeks specifically as to their underlying asbestos claims against BASF and, in addition to, "Other Defendants," which are other defendants in the underlying case. However, BASF's subpoena is far, far broader than that. BASF's subpoena to the Bevan Law Firm requests documents from its files relating to "Claimants." BASF's discovery defines as "Claimants" as "**all individuals identified in paragraph 286** in the July 16, 2015 Second Amended Class Action Complaint, **including but not limited to**…[the Named Plaintiffs and their respective decedents]. *See* BASF Subpoena dated 11/21/16 (attached hereto as Exhibit B). Paragraph 286 of the Second Amended Complaint is Plaintiffs' class definition. *See* SAC ¶ 286. Accordingly, Plaintiffs will discuss the irrelevance of the documents BASF seeks as they relate to all Named Plaintiffs and the absent class members.

12

to BASF's letter dated February 16, 2017 to the District of New Jersey District Court concerning privilege and work product waiver on March 1, 2017. (D.N.J. Dkt. 249). Plaintiffs incorporate this submission herein by reference.

Plaintiffs nonetheless believe it is important to reiterate to the Court here in response to BASF's motion to enforce its subpoena their strong disagreement with BASF's central premise that it is entitled to take wide-ranging discovery and send document requests regarding any of the Bevan Law Firm's clients who sued BASF in BASF's efforts to show that the Bevan Law Firm's clients' underlying cases were meritless and were dismissed for reasons other than BASF's and Cahill's fraud regarding Emtal's asbestos content.[5] BASF once more ignores what this case is all about — BASF and Cahill's systematic fraud and fraudulent concealment. It is not a reopening of the *Williams* Plaintiffs' underlying cases or a re-do of any putative class member's dismissed claims. *Williams*, 765 F.3d at 311. Further, while it is clear from Plaintiffs' Complaint and all of Plaintiffs' submissions to date that it is BASF's and Cahill's conduct at issue in this litigation, with the effect of the well documented spoliation and fraud rather obvious direct and intended, BASF in an attempt to obtain the irrelevant discovery it seeks takes the position that it is nonparty "**Bevan's decision-making, advice, and recommendations at**

---

[5] *See* 3/20/17 BASF Br. at 7 ("If, for example…there were concerns about the validity or merit of the underlying claims against Engelhard…then plaintiffs' claims would fail.").

**the forefront of the case**," along with that of the other law firms representing members of the putative class. (BASF Br. at 6) (emphasis added). BASF goes so far as to say that three of the named Plaintiffs "allege that their decedents settled their lawsuits against Engelhard and its subsidiaries *in reliance on* Bevan's advice." (BASF Br. at 8) (emphasis in original). To be clear, it is not Bevan's advice to the Plaintiffs' at issue in this case, but rather it is BASF's spoliation, misrepresentations and concealment of evidence, which were the basis for Bevan's advice and the reason Plaintiffs' dismissed and/or settled their suits. BASF's attempts to reframe Plaintiffs' allegations to villainize the Bevan Law Firm only serves to victimize Bevan and its former clients (again) and should be ignored.[6] *Id.*

---

[6] BASF also attempts to villainize Plaintiffs and Bevan by making inappropriate and unfounded accusations that Bevan may have indiscriminately settled and/or dismissed cases and agreed to the "low-dollar/high-volume settlements that were the hallmarks of the often abusive asbestos mass tort actions of the 1980s and 1990s, of which the *Williams* plaintiffs' decedents' cases were a part." *See* BASF's Br. at 13-14. Further, the Third Circuit has already determined that what Bevan did or did not do in other clients' cases is not relevant to Plaintiffs' cases here:

> **First, plaintiffs' lawyers are not the plaintiffs themselves. A plaintiff, not his or her lawyer, must decide whether to initiate litigation or to end it.** *See, e.g.,* N.J. Rules of Professional Conduct 1.2(a). **So whatever a lawyer does on behalf of another client proves little, if anything, about the beliefs of a different client.**

*Williams*, *supra*, 765 F.3d at 322-323. *See also* Footnote 10 herein.

BASF's irrelevant and unfounded accusations against Bevan are an attempt to divert the Court's focus away from what is actually at issue in this case—**BASF and its former counsel Cahill Gordon's fraud and fraudulent concealment**. The Court should not be distracted.

14

BASF has neither the right nor the need to delve into the merits of each and every dismissed case in general, and certainly not the microscopic examination it wants to conduct here, such as discovery about Bevan's clients' settlements with other asbestos defendants.[7] *See* D.N.J. Dkt. 267 (Pls. Settlement Doc. Submission)); (D.N.J. Dkt. 249 (Pls. Scope of Discovery Submission)).  As set forth at length in Plaintiffs' Scope of Discovery submission, such deep discovery into the underlying cases that BASF's and Cahill's fraud pretermitted, cannot be permitted because it is irrelevant to the claims Plaintiffs assert.

Simply put, BASF forfeited its right to take this discovery and, in effect, re-litigate the underlying claims, when it chose to spoliate evidence and then systematically lie about Emtal talc. Under these circumstances it would be unconscionable if BASF were allowed a "do over" on the merits of the underlying cases. Indeed, if BASF's view of what it is entitled to discover were correct, it would turn the law on its head and encourage a defendant to spoliate evidence, lie about pivotal material facts to avoid liability (here successfully for approximately 27 years), and then ultimately claim it is entitled to escape all consequences for its unlawful conduct because it now wants to prove that the underlying claims it went to great lengths to avoid through fraudulent means are somehow lacking in merit or real value.

---

[7] BASF Subpoena Document Requests Nos. 4, 5, 6, 7, 16.

15

Again we remind this Court that the Third Circuit has already essentially rejected BASF's position in the passage we quoted earlier:

> As pleaded, this lawsuit concerns years of purported deceit by Engelhard and Cahill. This action is not itself an asbestos injury case, but rather an action about Engelhard and Cahill's conduct when they confronted asbestos injury cases in state courts around the country. The alleged scheme outlived most of the original plaintiffs, whose diseases have since taken their lives. It did not last forever. Spurred by recent testimony that Engelhard's talc contained asbestos and that the company knew it, survivors and successors of the original asbestos-injury suits have brought new claims against Cahill and BASF, Engelhard's successor. The crux of their complaint is that BASF and Cahill defrauded them in their initial lawsuits and caused them to settle or dismiss claims that they would otherwise have pursued.

*Williams*, 765 F.3d at 311.

In short, the time to have challenged the merits of the subject underlying cases, as well as the relative culpability of BASF versus co-defendants, was at the time the underlying cases were pending. Having chosen to employ a "one-size-fits-all jugular cut" approach to end or avoid asbestos suits through acts of spoliation and deceit, BASF cannot now in the context of defending against fraudulent concealment and fraud claims take discovery on the merits of the Bevan Law Firm's clients' underlying cases, including Plaintiffs Williams, Pease, Holley, Ware and Wengerd.[8]

---

[8] The Third Circuit in this case has already held that Plaintiffs are not required to prove they would have otherwise been successful on their underlying asbestos claims in order to prove their spoliation ("Fraudulent Concealment") claim against

Plaintiffs also briefly respond to BASF's claim that it needs to take discovery on the Bevan Law Firm's and its client's reliance on its representations about Emtal. It asserts here that Plaintiffs' fraudulent concealment claim commands discovery into the underlying asbestos lawsuits to establish the materiality of the destroyed and/or concealed evidence that proved the Emtal talc contained asbestos. BASF Br. at 5-11. Frankly, BASF's contention that reliance is a core, material issue in this case fails in the face of its repeated admissions in its attorneys' solicitation letters that asbestos claimant lawyers dismissed case after case filed against BASF based upon BASF's representations and accompanying supporting materials that there was no evidence of asbestos in Emtal talc. *See* Pls' Motion in Support of Rothenberg D.N.J. Dkt. 243 at Ex. M; Ex. N; Ex. O; *see also* Ex. Q (1/12/1990 Letter from Marsac to Corry); Ex. R (3/02/90 Letter from Cahill to Brodhead); Ex. S (4/23/92 Letter from Cahill to Economus); and Ex. T

---

BASF and Cahill.  *Williams*, *supra*, 765 F.3d at 323.

  We observe here that BASF also fails to establish how information regarding other defendants in the underlying asbestos lawsuits is relevant. BASF Br. at 5-11. Indeed, BASF may not under governing New Jersey law seek contribution or indemnification from these defendants as this case is an independent tort action solely based on BASF's, Cahill's, and other associated defendants' spoliation and misconduct conducting BASF's asbestos defense. BASF also has not asserted any third party claims against any of the defendants who were parties in the underlying asbestos lawsuits. Plaintiffs incorporate by reference their response to BASF's letter regarding settlement documents (D.N.J. Dkt. 267) as if set forth fully herein.

17

(08/24/94 Letter from Cahill to Foley).[9] Having repeatedly said this for years as the main pillar of its routine defense, BASF and Cahill cannot claim that reliance is a real and core disputed issue in this case.[10]

Furthermore, New Jersey and Third Circuit law hold that reliance is not an element of a New Jersey's fraudulent concealment spoliation claim, which is the central claim in this case. *Williams*, *supra*, 765 F.3d at 323. As observed in *Williams*: "[A] lawyer or litigant who destroys or conceals evidence may be liable

---

[9] These cited materials are available on ECF. Plaintiffs will file herein and provide chambers copies to the Court should it require copies be filed in this Court as well.

[10] Plaintiffs also take issue with Footnote 2 of BASF's Brief in Support of its Motion to Enforce Subpoena *duces tecum*. In that footnote, BASF claims that "Plaintiffs' allegations of reliance are directly contradicted by the fact that Bevan continued to file multiple lawsuits against Engelhard even after receiving the purported misrepresentations about Emtal talc." (BASF Br. at 4, fn 2). To be clear, the Third Circuit has already rejected BASF's position:

> The crux of this theory is that plaintiffs' lawyers did not actually believe BASF's representations that its products did not contain asbestos and thus their clients could not have relied on those representations. For example, notwithstanding the fact that BASF represented to Williams's lawyers that its products did not contain talc, Williams's lawyers filed subsequent asbestos-injury cases against BASF on behalf of other plaintiffs. Thus, according to BASF and Cahill, plaintiffs could not have relied on the misstatements in prosecuting their cases because their lawyers did not rely on them.
>
> **We do not accept this argument. First, plaintiffs' lawyers are not the plaintiffs themselves. A plaintiff, not his or her lawyer, must decide whether to initiate litigation or to end it.** *See, e.g.,* N.J. Rules of Professional Conduct 1.2(a). **So whatever a lawyer does on behalf of another client proves little, if anything, about the beliefs of a different client**.

*Williams*, *supra*, 765 F.3d at 322-323.

even if he or she makes no representations to his or her adversaries at all." *Id.* At most, reliance is only at issue in the narrow circumstances of the Named Plaintiffs' fraud claim. As set forth in detail in Plaintiffs' Scope of Discovery Submission (D.N.J. Dkt. 249), Plaintiffs are only seeking class certification on the first three elements of the fraud cause of action. *Id.* at 16-18.[11]

As this litigation concerns only the alleged fraudulent concealment and fraud of BASF and its co-defendants, BASF may not after thirty years of avoiding liability through spoliating evidence and making false statements to claimants and courts, attack Plaintiffs' allegations by arguing there was no viable asbestos claim in the underlying cases in the first place. The time to have done that expired years ago before it obtained dismissals.

## 2.     Absent Class Member Discovery is Inappropriate.

BASF argues that its subpoena should be enforced because the discovery it seeks is relevant for class certification purposes. BASF's argument fails. Discovery of absent class members is disfavored by the courts and requires Defendants to make a heightened showing of particularized need. *See* Manual for Complex Litigation (4th) §21.41 at 302 ("[D]iscovery directed at individual class members (other than named plaintiffs) should be conditioned on a showing that it serves a

---

[11]  Additionally, to the extent the fraud occurred in connection with BASF's dismissals on motions for summary judgment, that court directed fraud cannot and should not require proof of Plaintiffs' reliance.

legitimate purpose."). That is because in a class action "an absent class action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 & fn.2 (1985). It follows that absent class members should be treated as "passive beneficiaries" of the litigation and, therefore, should not be subjected to undue involvement, burden or bother. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974).

From this there has emerged the well-recognized principle that absent class member discovery, including depositions, document requests and interrogatories, are disfavored by the courts and are not allowed as a matter of course. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986); *Groth v. Robert Bosch Corp.*, No. 07-962, 2008 WL 2704709, 2008 U.S. Dist. LEXIS 52328, at *1 (W.D. Mich. Jul. 9, 2008) (in "putative class action," stating that "discovery from absent class members is not warranted as a matter of course"); *In re Lucent Techs. Inc. Sec. Litig.*, No. 00-621, 2002 WL 32815233, 2002 U.S. Dist. LEXIS 24973, at *2 (D.N.J. July 16, 2002) (observing absent class member discovery disfavored and generally not permitted); *see also* Manual for Complex Litigation (4th) §21.14 at 256–57 ("Discovery relevant to certification should generally be directed to the named parties."). In fact, discovery from absent class members is allowed only where and upon the requesting party first demonstrates to a court a strong showing

20

of specific need for the information being sought. *Id.* And, where allowed: "[T]he court should consider imposing limits beyond those contemplated by the Federal Rules of Civil Procedure." Manual for Complex Litigation (4th) §21.14 at 256–57.

BASF here has not made the requisite particularized showing that the settlement-related information it seeks from the absent class members is needed, relevant and permissible discovery. It has not made any showing that the settlement-related information requested in regards to its own settlements is not already in its files or otherwise available from its co-defendant and former counsel Cahill. Moreover, even if the requested information relating to absent class members were in fact relevant and not available from another source, no such discovery should be permitted unless and until appropriate safeguards for the absent class members made. In the context of this case, limits should especially include limits and restrictions that preserve absent class members privacy rights and legal privileges.

**C.      Plaintiffs Did Not Waive Attorney-Client Privilege And Work-Product Protection.**

      **1.      There has not been any requisite judicial ruling that Plaintiffs' attorney-client privilege must yield to other societal concerns as required by *In Re Kozlov and progeny* in order to find an implied "at issue" waiver in this case.**

Plaintiffs' position on the continuing privileged and protected nature of the information at issue is supported by New Jersey law.[12] Contrary to BASF's view of things, New Jersey law does not make waiver of privileges an automatic occurrence whenever confidential or privileged matter is implicated by an affirmative claim or a defense in a lawsuit or similar judicial proceeding. *In re Kozlov*, 79 N.J. 232, 242–43, 398 A.2d 882 (1979). Under *Kozlov* and its progeny (discussed in Plaintiff's Scope of Discovery submission, (D.N.J. Dkt. 249) at 24 *et*

---

[12] BASF's citations to Ohio law are inapplicable here as New Jersey privilege law applies to the *Williams* case. *See* FRE 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). More specifically, when this matter was before the Third Circuit, whether New Jersey law governed was critical to the Circuit Court panel and an issue eventually addressed by the court in the course of its opinion reinstating and remanding this case for further proceedings. All parties agreed New Jersey law governed, which led to the following ruling in the Third Circuit's *Williams* opinion:

> **BASF and Cahill both agreed that New Jersey law applied** and, moreover, that choice-of law-issues may be waived….to the extent the parties may have sought the application of other law to the tort claims, they have waived their right to do so… [a]ccordingly, we apply New Jersey law.

*Id.* at 317.

Plaintiffs address this issue at length in their Scope of Discovery Submission (Dkt. 249 at p. 22)

*seq.*) yielding of the privileges is not automatic or a *fait accompli* matter for this Court to rule that the *Williams* Named Plaintiffs' attorney-client privileges have been impliedly waived by virtue alone of their assertion of fraud and fraudulent concealment in connection with underlying litigation based upon BASF's documented lies and material omissions in the course of that litigation. Indeed, New Jersey law requires that a trial court first conduct a three factor analysis set out in *Kozlov*, 79 N.J. 232, 242–43, 398 A.2d 882 (1979), before ruling that a party has impliedly waived a disclosure privilege and is compelled to divulge privileged communications and information. *Id.*; *V.K. v. NJ Mfrs. Ins. Co.*, No. A-4681-11T4, 2013 N.J. Super. Unpub. LEXIS 2111, at *19 (App. Div. Aug. 26, 2013); *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561, 483 A.2d 821 (App. Div. 1984).[13] Additionally, and importantly, under New Jersey law, any compelled disclosure based upon implied waiver must be narrowly tailored to just meet the imperative needs of the case and no more. *Id.*

---

[13] *Kozlov* provides the following three-part test to determine whether a party's attorney-client privilege must yield to other important societal concerns: (1) "there must be a legitimate need…to reach the evidence sought to be shielded;" (2) "there must be a showing of the relevance and materiality of that evidence to the issue before the court;" and (3) "the party seeking to bar assertion of the privilege must show 'by a fair preponderance of the evidence including all reasonable inferences that the information [cannot] be secured from any less intrusive source." *In re Kozlov*, 79 N.J. at 242–43).

23

None of these prerequisite determinations under *Kozlov,* which are BASF's burden to establish, have been made in this case. BASF has not met its burden of proving *Kozlov's* three-part test. In fact it does not even reference *Kozlov* or its factors in its memorandum of law. *See* BASF Br. at 11-14. BASF's bald assertions that the Named Plaintiffs have put their privileged communications with counsel at best only go to one of the three factors of *Kozlov*, i.e., the need prong. And that assertion hardly requires Plaintiffs Williams, Pease, Holley, Ware and Wengerd to divulge each and every privileged communication with the Bevan Law Firm, or reveal their privileged settlement-related communications and mental impressions. (D.N.J. Dkt. 249) at 20-28. And as set forth in Plaintiffs' submission on the Scope of Discovery, Plaintiffs disagree that they put all privileged communications and protected mental impressions relating to their underlying cases at issue in this litigation.

> **2.      Absent Class Members are passive members of the litigation who cannot be said to have waived the attorney-client privilege and/or work product protection by the fact this suit on their behalf was filed.**

In BASF's discussion of the *Williams* Plaintiffs alleged attorney-client privilege and work product waiver, (BASF Br. at 11-14) it is not clear whether BASF's references to "*Williams* Plaintiffs" and "Bevan's former clients" is limited to the five named *Williams* Plaintiffs (Williams, Pease, Holley, Ware and Wengerd) or the five named *Williams* Plaintiffs **and** the absent class members.

24

However, BASF's subpoena served on the Bevan Law Firm requests documents from the firm's files relating to "Claimants." BASF defined "Claimants" as "all individuals identified in paragraph 286 in the July 16, 2015 Second Amended Class Action Complaint, including but not limited to…[the Named Plaintiffs and their respective decedents]. Paragraph 286 of the Second Amended Complaint is Plaintiffs' class definition. Accordingly, the Plaintiffs will briefly discuss why the absent class members cannot be said to have waived the attorney-client privilege and/or work product protection.

To the extent BASF seeks privileged or confidential settlement and other case specific information relating to Plaintiffs' and the absent class members' respective underlying cases, BASF is not entitled to such discovery. In no way can it be found the absent class members have waived their attorney-client privilege and/or work product protection in regards to settlement-related documents or their communications with their former counsel. Plaintiffs have previously addressed this issue at length in Plaintiffs' Submission on the Scope of discovery as does the Rothenberg Law Firm in its Motion to Quash the Subpoena *duces tecum* BASF served on it. Dkt. 249 at 19-28 (Scope of Discovery Submission); Dkt. 229-2 at 9-10 (Rothenberg Motion to Quash Subpoena *Duces Tecum*). Here, no class has been certified yet and the absent class members are not active participants in this litigation. *Id.* The putative absent class members have not put their underlying

25

litigations and/or their communications with counsel at issue. *Id*. They therefore have a right to be left alone and outside the scope of discovery and their privileges and privacy respected at this time. BASF's discovery initiatives and requests as to them should be prohibited.

**D. BASF's Bevan Subpoena is Unduly Burdensome and Oppressive**.

The subpoena served upon the Bevan Law Firm and Thomas Bevan require production of documents and information from approximately three thousand (3,000) asbestos claimant files. The Bevan Law Firm is a boutique size litigation firm. Compliance with BASF's subpoena would require the full attention of the Bevan Law Firm and its current counsel to engage in a comprehensive review of those 3,000 files to determine whether the original asbestos claimants are still living after the passage of twenty or more years, and if deceased, to determine the respective heirs, as well as to provide all non-privileged and non-protected documents and information responsive to the subpoena. Compliance with BASF's subpoena would essentially bring the firm's business to a screeching halt to the detriment of its current clients. Moreover, the Bevan Law Firm would suffer extreme financial hardship. In addition to devoting all of its attorneys and current staff to a task this size, Bevan would have to hire additional staff to comply. This would stop all revenue generation for the Bevan Law Firm. Compliance with BASF's subpoena would be a monumental task for any law firm to comply with,

26

but for a boutique size firm like the Bevan Law Firm, compliance could risk the Firm having to close its doors.

Further, the time and expense that would be incurred in reviewing the documents within 3,000 files, and if responsive, for privilege and then preparing a voluminous privilege log explaining the basis for withholding each responsive document would cost the Bevan Law Firm and its counsel thousands of hours of valuable attorney time they could use to serve their current clients. As expressed above, to engage in the task BASF demands would completely disrupt the firm's and its counsel's normal operations and business. *See In re CareSource Mgmt. Grp. Co.,* 289 F.R.D 251, 253 (S.D. Ohio 2013) (quashing subpoena served on non-party that sought sixteen categories of documents and sixteen interrogatories where compliance would take 1,000 hours of employee time to prepare the documents requested); *In re Auto Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D.Pa. 2005) (subpoena requesting all written, electronic, and other records created by a non-party from 1990 to the present was unduly burdensome).

In addition to the manpower, time and expense associated with scouring through 3,000 former asbestos claimant files spanning over twenty-five (25) years, reviewing those files for relevance, responsiveness, and privilege and then creating an extensive privilege log that would completely and utterly disrupt a boutique size law firm like Bevan and its current counsel, there are a number of substantive

27

procedural hurdles too burdensome for Bevan and Bevan's counsel to overcome to make compliance with the subpoena proportional to the needs of the case.

Specifically, in order to produce the requested information (most of which is confidential medical records, settlement documents and/or privileged communications), Bevan and its counsel would have to locate, contact and obtain authorizations from all 3,000 former asbestos claimants or their respective heirs in order to release the information BASF seeks. If Bevan and/or its current counsel did not obtain authorization, they would be exposing themselves to potential liability for invasion of privacy.

Ironically, the burden BASF is now attempting to place on the Bevan Law Firm (as well as other nonparty law firms in separate filings in the District of New Jersey, including the Rothenberg Law Firm and Early, Lucarelli, Sweeny & Meisenkothen) would have been avoided had BASF not engaged in a pattern and practice of fraud and deceit 25-30 years ago in the underlying matters. The Rothenberg Law Firm specifically filed a Motion to Quash BASF's subpoena citing undue burden and hardship to comply with such a request (and Rothenberg had 1,200 less clients). *See* D.N.J. Dkt. 243 (Rothenberg Law Firm Motion to Quash Subpoena). BASF should not now benefit from its fraudulent conduct by placing an unreasonable discovery burden on a **non-party**.

28

## V.    CONCLUSION

For all of the above reasons, BASF's Motion to Enforce subpoena served upon nonparties Thomas Bevan, Esq. and Bevan & Associates, LPA should be denied.

Dated: April 3, 2017

**BEVAN & ASSOCIATES, LPA, INC**

/s/Anjali A. Mehta
Anajli A. Mehta, Esq (0085569)
6555 Dean Memorial Pkwy
Boston Heights, OH 44236
Tel: 330-650-0088
Fax: 330-467-4493

**COHEN, PLACITELLA & ROTH, P.C.**

/s/ *Jared M. Placitella*
Jared M. Placitella, Esq.
(Pro Hac Vice pending)
127 Maple Ave
Red Bank, New Jersey 07701
jmplacitella@cprlaw.com
(Tel): (732) 747-9003
(Fax): (732) 747-9004

**FOX ROTHSCHILD LLP**
Jeffrey M. Pollock, Esq.
Princeton Pike Corp. Center
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648
(609) 896-7660

*Attorneys for Plaintiffs and the Putative Class*

29

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2017, I served the foregoing Plaintiffs' Memorandum in

Opposition to BASF's Motion to Enforce Subpoena *Duces Tecum* to Third Parties Bevan &

Associates, LPA and Thomas Bevan via ECF and Email:

| | |
|---|---|
| Eugene F. Assaf, P.C.<br>Kirkland & Ellis, LLP<br>655 15th St., N.W.<br>Washington, D.C. 20005<br>eassaf@kirkland.com | John K. Villa, Esq.<br>Williams & Connolly, LLP<br>725 12th Street, N.W.<br>Washington, D.C. 20005<br>jvilla@wc.com |
| Michael F. Williams, Esq.<br>Kirkland & Ellis, LLP<br>655 15th St., N.W.<br>Facsimile: (202) 879-5200<br>mwilliams@kirkland.com | Grant A. Geyerman, Esq.<br>Williams & Connolly, LLP<br>725 12th Street, N.W.<br>Washington, D.C. 20005<br>ggeyerman@wc.com |
| Matthew D. Ridings, Esq.<br>John R. Mitchell, Esq.<br>Thompson Hine LLP<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114<br>matt.ridings@thompsonhine.com<br>john.mitchell@thompsonhine.com | Robert E. Ryan, Esq.<br>Connell Foley, LLP<br>85 Livingston Avenue<br>Roseland, New Jersey 07068<br>rryan@connellfoley.com<br><br>*Attorneys for Cahill Defendants* |
| *Attorneys for Defendant, BASF Catalysts, LLC* | |
| Kevin H. Marino, Esq.<br>Marino, Tortorella & Boyle, P.C.<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>kmarino@khmarino.com | Eric Tunis, Esq.<br>Herold Law, P.A.<br>25 Independence Boulevard<br>Warren, New Jersey 07059<br>etunis@heroldlaw.com |
| John A. Boyle, Esq. | *Attorneys for Defendant Thomas Halket* |

Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928
jboyle@khmarino.com

*Attorneys for Defendant Arthur Dornbusch*

Brendan E. Little
LEVY KONIGSBERG LLP
800 Third Avenue
New York, NY 10022
*Attorneys for Third Party Bevan & Associates LPA,*

*Inc.*

Dated: April 3, 2017                               **COHEN, PLACITELLA & ROTH, P.C.**

/s/  *Jared M. Placitella            )*
Jared M. Placitella, Esq.
127 Maple Avenue
Red Bank, New Jersey 07701
(732) 747-9003

*Attorneys for Plaintiffs and the Proposed C*lass

31