# EXHIBIT "A"

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

IN RE:                                    :

    NORTHERN OHIO TIRE          :    Judge Victor
    WORKER LITIGATION

                             :

                             PLAINTIFFS'
                         :  :  QUESTIONNAIRE AND
                             FIRST REQUEST FOR
                         :  PRODUCTION OF DOCUMENTS
                             DIRECTED TO DEFENDANTS

RESPONSE OF DEFENDANTS PITA REALTY LIMITED,
EASTERN MAGNESIA TALC COMPANY, AND ENGELHARD
CORPORATION TO PLAINTIFFS' QUESTIONNAIRE AND
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DEFENDANTS

## PRELIMINARY STATEMENT

    This questionnaire response is submitted on behalf of
Defendants Pita Realty Limited ("Pita"), formerly known as
Eastern Magnesia Talc Company ("EmTal"), and Engelhard
Corporation ("Engelhard"), which has been named in these actions
solely by virtue of the fact that it owns 100% of the shares of
Pita.  The response by Engelhard does not constitute an admission
that it is in any way liable for any activities engaged in by
EmTal or Pita, which were and/or are separate and independent
corporations.  For purposes of simplifying the responses to this
Questionnaire, the name Pita when used herein shall refer
collectively to Pita, EmTal, and Engelhard.

    Pita did not mine, mill, manufacture, process, market,
distribute, or sell asbestos or asbestos-containing products.
Pita, formerly known as Eastern Magnesia Talc Company, was
engaged in the mining and milling of talc from a single mine
located in Johnson, Vermont from 1967 to 1983.  Pita previously
has provided to plaintiffs' counsel an affidavit and supporting
materials demonstrating that the talc from this mine did not
contain asbestos.  The vast majority of these questions -- which
were drafted in and for litigation against asbestos defendants --
either speak directly of asbestos or asbestos-containing products
or presuppose some connection on the part of the answering
Defendant with asbestos or asbestos-containing products.  Since
it was not engaged in any such activity, Pita indicates a
response of "Not Applicable" to such questions.

    In addition, these questions concern events which
occurred many years ago and relate to business operations that

BASF FC 0014735

-2-

ceased in 1983. The following answers are believed to be accurate as of the date of filing, but Pita's investigation of the underlying facts is continuing.

Pita hereby incorporates by reference this preliminary statement into the response to each question.

## GENERAL OBJECTIONS

1.   As a general matter, Plaintiffs' Questions and Requests for Production of documents ("Questions") to Pita are objectionable as they are overly broad, compound, complex, vague, ambiguous, and are intended to annoy, oppress, and inconvenience Pita.

2.   Pita objects generally to Plaintiffs' Questions as irrelevant, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence admissible at trial.

3.   Pita objects generally to Plaintiffs' Questions to the extent that they seek information subject to either the attorney-client privilege or the privilege afforded attorneys' work-product.

4.   Pita objects to each Question requesting that it identify each document referring or relating to particular answers on the grounds that each such Question is vague, ambiguous, overly broad, cumulative, unduly burdensome and expensive, and not reasonably calculated to lead to evidence admissible at trial.

5.   Pita objects to each Question requesting that it identify each person who has knowledge or information referring or relating to particular answers, on the grounds that such Questions are vague, ambiguous, overly broad, unduly burdensome and expensive, and not reasonably calculated to lead to evidence admissible at trial.

6.   Pita objects generally to Plaintiff's Questions to the extent that they purport to require Pita to conduct discovery against third-parties or attempt to require it to seek and furnish information from, and to reply to on behalf of, persons or corporations over whom Pita exercises no control or on whose behalf Pita has no actual or apparent authority to respond.  This

BASF FC 0014736

-3-

requirement is unduly burdensome, the information is equally available to Plaintiffs under the Ohio Rules of Civil Procedure, and Pita's compliance is not required by law.

7.    Pita objects to the following terms as defined in the definitions and instructions below: "predecessors in interest," "predecessor," "any person or firm acting on its behalf," "representatives," "you," "your," "anyone else acting on your behalf," and "Plaintiffs' Employers," on the grounds that they are vague, ambiguous, overly broad, irrelevant, unduly burdensome, and seek to impose an unreasonable burden on a corporation, whose corporate knowledge and information is necessarily limited to the acts of its officers and employees or the authorized acts of its agents.

Pita hereby incorporates by reference these general objections into the response to each question.

## LIMITATIONS

Trial preparation and factual investigation are ongoing. Accordingly, Pita's Answers to these Questions are based solely on information known to it at the time of the filing of these Answers. Defendant reserves the right, therefore, to make reference at trial, or in any other hearings in this action, to facts and documents not identified in these responses, the existence or relevance of which is subsequently discovered by Pita or its counsel.

## DEFINITIONS AND INSTRUCTIONS

a.    This Questionnaire is to be responded to in affidavit form.

b.    "Defendant" refers to any Defendant upon whom these questions are served, its affiliated companies, predecessors in interest, subsidiaries, divisions, and joint ventures, and its officers, employees, servants, agents, representatives, insurers, attorneys, and any person or firm acting on its behalf.

c.    The word "you" or "your" refers to Defendant, to all your predecessors in interest, (whether by purchase, merger, consolidation or otherwise), to all of your subsidiaries, divisions, joint ventures or affiliates in which you own or did own any proprietary interest or share, and to your representatives, employees, agents, servants, distributors,

-4-

insurance carriers, and attorneys, or anyone else acting on your behalf as appropriate within the context of the question.

     d.  "Your asbestos products" or "asbestos-containing products" includes all products containing any amount of asbestos (including, but not limited to, raw asbestos, mined asbestos, milled asbestos, asbestos compounds, materials and products containing asbestos and asbestos in any of its several crystalline and other chemical forms such as tremolite, crocidolite, amosite or chrysotile), made, mined or processed by your or for you by others regardless of whether such products carried your label, brand name, or trademark.

     e.  "Identify" or "identification" when used in reference to a person means to state the person's full name and last known address and the person's last known title and business affiliation.

     f.  "Plaintiffs' Employers" means all Ohio locations and/or plants of the following companies, including their predecessors in interest, their successors and assigns, and former companies, subject to additions to be provided to the Defendants by Plaintiffs:

  (1)  B.F. Goodrich Co.
  (2)  General Tire & Rubber Co. aka General Tire
  (3)  Mohawk Rubber Co.
  (4)  Seiberling Tire & Rubber Co.
  (5)  Goodyear Tire & Rubber Co.
  (6)  Goodyear Aerospace aka Loral Systems
  (7)  Firestone Tire & Rubber Co.
  (8)  American Hard Rubber Co. (aka General Tire Plant #2)
  (9)  Midwest Rubber, MBS Chem., Inc., aka Midwest Rubber Reclaiming Co.
 (10)  H. Muehlstein, Inc. aka H. Muehlstein Rubber Co.
 (11)  Teledyne-Monarch Rubber Co., aka Monarch Rubber
 (12)  Ferriot, Inc., aka Ferriot Brothers
 (13)  Nye Rubber nka Polysar
 (14)  Sun Rubber
 (15)  Bearfoot Corporation, fka Bearfoot Sole
 (16)  Ken-Tool, aka Warren Tool Co.
 (17)  Babcock & Wilcox Co., aka B & W
 (18)  RCA Rubber Co.
 (19)  Ric-Wil, Inc., aka R-W Manufacturing
 (20)  Dayton Tire & Rubber Co.
 (21)  Inland Manufacturing Company, an operating Division of General Motors Corp.
 (22)  Miller Rubber Co. (aka B.F. Goodrich Plant #4)

BASF FC 0014738

-5-

<u>QUESTIONS</u>

1.  <u>Identify</u> the person signing this questionnaire on behalf of the answering Defendant.

<u>Answer</u>:    Charles D. Carter, Engelhard Corporation, Menlo Park CN28, Edison, New Jersey 08818.

2.  Are <u>you</u> now or have <u>you</u> ever been involved in the mining, milling, manufacture, processing, sale, supplying or distribution of talc, soapstone, or asbestos-containing products at any time?

If so please state:

a.  The <u>identity</u> of each such product by stating its trade name and by describing it and its contents.

b.  The formula and chemical composition of each such product and:

    (i)    the ingredients and components of each product including any variations or changes the formula underwent;

    (ii)   the percent by and weight of each product that each of the above listed ingredients or compounds comprised and;

    (iii)  state the time period each particular formula was followed:

c.  The dates each of such products were placed on the market;

d.  The dates each of such products were withdrawn from the market;

e.  Whether each such product contained crocidolite, amosite, tremolite or chyrsotile asbestos, or any combination of them, specifying the qualitative percentage of the particular form of asbestos fiber to the whole amount of asbestos in the product;

f.  A description of the physical appearance of each product, including its color and appearance, texture, and whether said product was/is in a solid, loose, powdered or other form, and include a photograph of each said product;

g.  Whether it is/was possible to distinguish <u>your</u> asbestos-containing products from those manufactured or

BASF FC 0014739

-6-

distributed by others when such products have been removed from
their container or containers, and if so, please explain how your
product can be distinguished from others;

h. A description of your intended uses of each such
product (i.e., for what uses were the products designed);

i. The name and address of the mining or milling
concern from which the raw asbestos fiber was obtained;

j. The name and address of the manufacturer of each
such product.

k. What were the foreseeable uses of each such
product;

l. A precise description of your identifying logo or
initials and the dates of inclusion on the product; and include a
photograph of each said logo;

m. State in which phase of commerce you engaged;

n. State the name and address of the seller or
distributor from whom you acquired the product; and

o. The period of time which such product has been
associated with Defendant.

Answer: With respect to talc only, yes. Pita did not
mine, mill, manufacture, process, market, distribute, or sell
asbestos or asbestos-containing products. Pita was engaged in
the mining and milling of talc from a single mine located in
Johnson, Vermont from 1967 to 1983. Pita previously has provided
to plaintiffs' counsel an affidavit and supporting materials
demonstrating that the talc from this mine did not contain
asbestos.

a. Pita sold various grades of talc that went by the
trade name "Emtal." The various grades were distinguished by
their different numbers.

b. Emtals were composed of Vermont talc, which is a
naturally occurring mineral commonly referred to as hydrous
magnesium silicate. The talc was mined and milled to certain
desired particle sizes. The various grades of Emtals were sold
from 1967 to 1983.

c. Pita began marketing these products in or about
1967.

-7-

    d.  The products were not withdrawn from the market. Pita ceased its talc mining and milling operations in 1983.

    e.  No.  Plaintiffs' counsel has previously been provided with evidence, including an affidavit, which proves that Emtal talc did not contain asbestos.

    f.  Emtals were generally white powders.  Pita does not believe that any photographs exist, but its investigation is continuing.

    g.  Not Applicable.

    h.  Emtals were used in the rubber industry as a dusting agent to facilitate handling of tacky rubber compounds during processing.

    i.  Not Applicable.

    j.  Not Applicable.

    k.  See Answer to Question No. 2(h).

    l.  The name Emtal along with a number, from 1967 to 1983.  Emtal does not believe that photographs are available, but its investigation is continuing.

    m.  Mining, milling, and selling talc.

    n.  Not Applicable.

    o.  1967 to 1983.

    3.  Did you design, manufacture, market, distribute, supply, sell, produce, or install machinery or equipment (including but not limited to boilers, presses, auto-claves, calendars, pot heaters, hot knife boxes, mills or curing heaters) to or for any of Plaintiff's employers?

If so please state:

    a.  The trade name of the machinery or equipment;

    b.  The purpose or use of the machinery or equipment,

    c.  Whether such machinery or equipment was insulated with asbestos-containing products;

    d.  Whether such machinery or equipment required the use of insulation to be safe and effective;

-8-

e. Whether you installed, serviced or maintained said equipment or machinery;

f. The names and locations of the Plaintiff's employers to whom such equipment or machinery was supplied;

g. The manufacturer, seller and supplier of all asbestos-containing products which were incorporated into any of your aforesaid products.

Answer:  No.

4. Please describe in detail how each of your talc, soapstone or asbestos-containing products were packaged and shipped, including:

a. The type, construction and dimensions of each such package or container used and the dates it was used; and provide a photograph of same;

b. The printed material on the package;

c. Any trademarks on the package;

d. Whether your products reached the consumer, insulator or ultimate user in Ohio without substantial change in the condition in which they were sold;

e. Identifying each label, printed material or trademark on such package and please attach a copy of such label, printed material or trademark.

Answer:

a. Pita did not mine, mill, process, distribute, manufacture, or sell asbestos or asbestos-containing products. With respect to talc, Emtals were shipped and sold in both multi-ply paper bags and in bulk.  These packagings were used from 1967 to 1983.  Pita does not believe that photographs exist, but its investigation is continuing.

b. Pita believes the name Eastern Magnesia Talc Company, product name, and weight.

c. A trademark used in association with the products was Emtal.

d. Emtals were sold F.O.B. Johnson, Vermont.  Emtal products should have reached the direct purchaser in substantially the same condition in which they were shipped.

-9-

e.  See Answers to Questions No 2(1), 4(b), and 4(c).
Pita does not believe that copies are available, but its
investigation is continuing.

5.  Identify the official and/or registered name of
answering Defendant, as well as any and all proper names or
predecessor entities by which defendant has existed, or has done
business under, and dates of operation under prior names and/or
predecessor entities.

Answer:  The official names of the answering
defendants are Pita Realty Limited (formerly Eastern Magnesia
Talc Company) and Engelhard Corporation.

Minerals & Chemicals Philipp Corporation ("M&C")
entered into a purchase agreement dated July 24, 1967 with
Eastern Magnesia Talc Co. Inc., a Vermont company ("EmTal
Vermont"), for the acquisition of EmTal Vermont's Johnson,
Vermont talc mine.  M&C assigned its rights under the purchase
agreement to a newly formed wholly-owned subsidiary, Eastern
Magnesia Talc Company, a Delaware company ("EmTal").

In September 1967, M&C was merged into Engelhard
Industries, Inc. which changed its name to Engelhard Minerals &
Chemicals Corporation ("EM&C").

In April and May 1981, EM&C transferred the stock of
EmTal to a wholly-owned subsidiary, Porocel Corporation, changed
Porocel's name to Engelhard Corporation ("Engelhard"), and spun
off to its shareholders, as a separate entity, the stock of
Engelhard.

In or about November 1983, EmTal closed its only mine,
which was located in Johnson, Vermont, and in July 1984 changed
its name to Pita Realty Limited ("Pita").  Pita continues to
exist as a wholly-owned subsidiary of Engelhard.

6.  Are you a corporation?  If so, please state your
correct corporate name, and the state of your incorporation, the
address of your principal place of business, the identity of your
statutory agent, and your corporate history.

Answer:  Yes.  Pita Realty Limited and Engelhard
Corporation are Delaware corporations with their principal places
of business in New Jersey.  Corporation Trust is the registered
statutory agent.

For corporate history, see Answer to Question No. 5.

7.  Identify all current or former divisions,
subsidiaries or affiliated companies to answering Defendant,

BASF FC 0014743

-10-

having any function which now or in the past engaged in any phase
of mining, manufacturing, sale, supply, distribution, or
installation of asbestos or asbestos-containing products.  With
respect to each of such division, subsidiaries or companies,
identify the nature and extent of such functions during the
relevant periods of time in which such activities have or had
occurred.

        Answer:   Not Applicable.  See Answer to Question No.
2.

        8.  Have you purchased, assumed, or in any other manner
acquired any of the assets and/or liabilities of any corporation
or entity (such assets or entities being limited to those engaged
in the mining of asbestos or the manufacturing, marketing,
distributing, installing, or servicing of asbestos products).

If so, please state:

        a.  The name of each such corporation or entity or the
entity formerly owning the assets.

        b.  The manner in which your interest was acquired;

        c.  The date of each such acquisition;

        d.  The state law governing each such acquisition, if
specified by contract;

        e.  The state of incorporation and principal place of
business of each entity acquired or of each entity in which an
interest was acquired or of each entity which sold and each
entity which purchased assets;

        f.  The type of asbestos activity of the acquired
entity; and

        g.  The relative percentage of the stock or interest
you purchased or acquired of each such corporation or entity.

        Answer:   No.

        9.  Please state whether or not the Defendant has sold,
traded, or in any other manner transferred any of its assets
and/or liabilities to any corporation or entity.

If so, please state:

        a.  The name, address and principal place of business
of each such acquiring corporation or entity;

BASF FC 0014744

-11-

b. The manner in which your interest was transferred;

c. The date of each such sale or transfer;

d. The state law governing each such sale or transfer, if specified by contract;

e. The nature of the interest that was transferred.

Answer:   Pita sold certain of its assets in 1984 to Acqui-Tal, Inc.  In addition, subsequent to 1983, when EmTal ceased its talc operations, EmTal and Pita engaged in a number of real estate transactions in Vermont.

10.   Did you ever have a division or subsidiary company engaged in the contracting business of applying and/or installing insulation products?

If so, please give the name of such division or subsidiary company, the full address of the home office of such division or subsidiary company and the dates such division or subsidiary company was engaged in the contracting business.  If so, please provide the full name, the last known address, and the job title of the supervisor and/or individual in your company primarily responsible for that division or subsidiary.

Answer:   No.

11.   State the name and address of each non-governmental customer in the State of Ohio, to which you have sold any asbestos-containing products from 1930 to date:

And for each such customer state:

a.   The trade name(s) of all such products sold.

b.   The dollar value and the quantity of such products sold in Ohio and the percentage of your total sales this constituted.

c.   The dates the products were sold, if known, or approximate dates.

d.   Whether you performed any installing, servicing, maintenance or repair of such products in Ohio.

e.   The name and address of your employees responsible for the management and control of the sales and distribution of your products in Ohio.

-12-

Identify each such document or writing pertaining to these records, and please attach a copy of such document or writing.

Answer:   Not Applicable.

12.   State whether at any time from 1930 to the present, you have dealt with a distributor, seller, supplier, advertiser, promoter, installer, repairer or other such person or entity regarding your asbestos-containing products for Ohio and regions including Ohio.

If so, please state, for each person or entity:

a.   the name and address (current, if known, and past) of each;

b.   the geographical areas involved;

c.   the dates of each involvement;

d.   the nature and purpose of each involvement;

e.   the existence and terms of any distributorship agreement, either orally or in writing, including any indemnity or third party liability agreements or covenants.

If there is a writing or document that describes or relates to these involvements, please attach a copy of such document or writing.

Answer:   Not Applicable.

13.   Identify the distribution chain or network of Defendant's asbestos products since 1930 along with any documents evidencing or confirming such chain, including but not limited to distribution from and to other Defendants.  Please attach a copy of each such document or writing.

Answer:   Not Applicable.

14.   Have your asbestos products been marketed and/or sold at any time by companies other than you?

If so, please state:

a.   The name and address of each such company;

b.   The specific products marketed and sold through these other companies; and

BASF FC 0014746

-13-

     c.  The dates <u>your</u> products were marketed or sold in this manner.

     <u>Answer</u>:  Not Applicable.

     15.  Have <u>you</u> at any time entered into a "rebranding" agreement with any other company, either as a buyer or a seller, concerning asbestos containing products?

If so, please state:

     a.  The name of the company manufacturing the asbestos products under such agreement;

     b.  The trade name affixed to such products;

     c.  The periods of time covered listed specifically for each such agreement;

     d.  The volume (in dollar amount) of each such transaction;

     e.  The purchaser of such products.

     f.  The identity of any writings, documents or contracts concerning such "rebranding" agreements and please attach a copy of such writing or document or contract.

     <u>Answer</u>:  Not Applicable.

     16.  With respect to Plaintiffs' employers, please state:

     a.  Whether <u>you</u> sold or supplied any asbestos-containing products, talc, or soapstone to any of them;

     b.  The company and plant or facility to whom you sold same;

     c.  The trade names of the products sold to each of them;

     d.  The dates each product was sold or supplied;

     e.  What documents exist relating to such sales and please attach copies of same;

     f.  The nature of any contact directly or indirectly that <u>you</u> have had with plaintiffs' employers;

BASF FC 0014747

-14-

g.  The names of your employees or agents who made the contacts with them for or on behalf of you;

h.  The dates of any contact with them;

i.  What documents establish the above-said contacts, and please attach copies of same;

j.  Whether you ever serviced, repaired or maintained any of your products or any other products in their plants;

k.  Where you serviced, repaired or maintained any of your products or any other products at their plants;

l.  What products you serviced, repaired or maintained in their plants and when this was done.

m.  Whether asbestos-containing products were used or involved in the servicing, repair or maintenance of any of the products you serviced, repaired or maintained at their plants;

n.  What documents relate to the servicing, repair or maintenance of any of your products at their plant, and please attach copies of same;

o.  Whether your asbestos-containing products were intended or foreseen by you to be used in their plants or facilities.

Answer:    Pita objects to Question No. 16 on the grounds that it is irrelevant, unduly burdensome, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Pita further objects on the grounds that most of the Complaints do not give Pita information sufficient to identify the plant or facility where a plaintiff was employed and none of the Complaints identify the years when a plaintiff was employed at any particular plant or facility.  Without waiving its objections, Pita answers as follows: No.  See Preliminary Statement and Answer to Question No. 2.

17.  With respect to any products mentioned in your responses to these discovery requests please state:

a.  Whether your products were intended or foreseen by you to be used by the rubber, plastic, or polymer industry;

b.  How your products were used by said industry;

c.  Which of your products were used by said industry and describe each such product;

BASF FC 0014748

-15-

d.  The identity of the persons representing you who dealt with said industry; and

e.  What documents exist that relate to the use of your products listed above and said industry.

Answer:

a.  Pita was aware that its talcs were used by the rubber industry.

b.  Talc was used as a dusting agent to facilitate handling of tacky rubber compounds during processing.

c.  See Answer to Question No. 2.

d.  Pita believes the C.P. Hall Company acted as a distributor to the rubber industry.

e.  Pita has certain sales documents.  In addition, the C.P. Hall Company has documents which relate to sales of Emtals.

18.  At any time from 1900 to the present, did you install, apply or otherwise place any asbestos-containing products in any of Plaintiffs' Employers' plants or facilities?

If so, please state:

a.  The dates of such installation or application;

b.  The manufacturer, seller, the entity from whom you acquired said products and the brand and/or trade name of the products so installed or applied;

c.  The intended use of each product;

d.  The name of the company and the plants in which said products were installed and/or applied; and

Identify all documents related to such installation or application, and attach a copy of each such document or writing.

Answer:  No.

19.  Did you ever make any sales in Ohio or to people or entities in Ohio?

Answer:  Pita did not sell any asbestos or asbestos-containing products.  See Preliminary Statement and Answer to Question No. 2.

BASF FC 0014749

-16-

20. As to all records in your custody or control which relate to the information requested in these questions irrespective of whether they were utilized in your responses, please state for each respective question:

a. the identity and nature of the records kept;

b. The name, address and job title of the custodian of said records.

Answer:

a. Pita objects to this blunderbuss question on the grounds that it is vague, overbroad, oppressive, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that this request calls for documents protected by the attorney work-product and/or attorney client privileges.

Notwithstanding the foregoing, Pita has certain sales and shipping records. Pita also has certain records produced by the C.P. Hall Company in other litigation.

b. There is no single individual who is the custodian of these records. Charles D. Carter, Engelhard Corporation, Menlo Park CN28, Edison, New Jersey 08818, has participated in the gathering of the records for this litigation, which have been turned over to counsel.

21. Please state, for each respective question herein, the name, address and job title of each of the individual(s) in your employ who are most knowledgeable regarding the information requested in these discovery requests irrespective of whether they contributed to your responses.

Answer: Charles D. Carter. See Answer to Question No. 20(b).

22. Please state, for each respective question herein, the name, address and job title of each individual who is not in your employ at this time whom you believe are the most knowledgeable regarding the information requested. Also state the name, address and job title of your employees who are most knowledgeable as to these people no longer in your employ.

Answer: The former plant manager, who would have the most knowledge, is deceased.

BASF FC 0014750

Charles D. Carter hereby declares under penalty of perjury that the following is true and correct:

I have read the foregoing answers to this questionnaire and know the contents thereof and believe those answers to be true and correct.

_Charles D. Carter_
On behalf of Defendants Pita Realty Limited, Eastern Magnesia Talc Company, and Engelhard Corporation

Sworn to and subscribed before me this 15th day of November 1990, at Menlo Park, New Jersey.

_Susan Neyers_
NOTARY PUBLIC
SUSAN NEYERS
Notary Public of New Jersey
My Commission Expires Dec. 10, 1992

BASF FC 0014751